Jenkintown Towing Service, David Thomas and Robert Thomas *v.* Zoning Hearing Board of Upper Moreland Township and Upper Moreland Township. Upper Moreland Township, Appellant.

Argued March 2, 1982, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

184

*Raymond Jenkins*, with him *George B. Ditter*, *Jenkins*, *Tarquini & Jenkins*, for appellant.

*Mabel D. Sellers*, with her *Donald A. Semisch*, *Semisch and Grau*, for appellee.

OPINION BY JUDGE CRAIG, June 17, 1982:

The Township of Upper Moreland, as intervenor, appeals from an order of the Court of Common Pleas of Montgomery County which reversed the Upper Moreland Zoning Hearing Board's decision denying a zoning variance to applicant Jenkintown Towing Service.

The applicant operates a business of vehicle towing and repair which qualifies as a nonconforming use in a C-1 commercial zone. The applicant, to accommodate its expanded business, requested the variance to permit the construction of an addition to its existing two-story building, which would enclose a site presently used for truck repair.

The proposed addition would incorporate retaining walls erected under a valid permit in 1978 and leave the structure five feet from the side boundary line, in contravention of ordinance provisions which establish the minimum side yard in a C-1 district as

thirty feet and limit the expansion of a nonconforming use to 25% of its building area, as calculated at the time the use became nonconforming.[1]

The board, after a hearing, denied the variance. Upon appeal, the court of common pleas initially remanded the case to the board for the purpose of taking

---

[1] The sideyard requirement was amended shortly before the hearing concerning applicant's variance proposal. Previously it had been ten feet. The proposed expansion would have violated the former ten-foot limitation, as well as the newer limit.

The parties dispute the interpretation of the 25% expansion limit, Section 1807 of the Upper Moreland Township Zoning Ordinance, which provides:

> Extension: Any lawful non-conforming use of a portion of a building may be extended throughout the building, and any lawful non-conforming building or any building of which a lawful non-conforming use is made may be extended upon the lot occupied by such building and held in single and separate ownership on the effective date of this Ordinance, provided that the area of such building shall not be increased by more than a total of twenty-five (25) per cent of the area of such building existing on the date it became lawful non-conforming building or a building of which a lawful non-conforming use is made, and provided, further that any structure alteration, extension, or addition shall conform with all the height area, width yard and coverage requirements for the District in which it is located.

The township argues that this provision does not count the floor area of additional stories as part of the "building area." The township relies on the definition of "building area" found in Section 10 of the ordinance:

> Building Area: The aggregate of the maximum horizontal *cross-section area of the buildings* on a lot excluding cornices, eaves, gutters or chimneys projecting not more than thirty-six (36) inches, steps, one story open porches, bay windows not extending through more than one story and not projecting more than eight (8) feet, balconies and terraces. (Emphasis supplied.)

The township is correct; when "building area" is thus defined as "*cross-section area* of the buildings on a lot," lot coverage rather than floor area is the measure. Therefore, applicant's proposed expansion does exceed the 25% limitation.

additional testimony on the hardships alleged by the applicant. Thereafter, the common pleas court reversed the board's reiterated denial and held that the applicant was entitled to a variance. The township, on appeal here, argues that, where the proposed expansion of a nonconforming use is in conflict with zoning requirements, the applicant must show more than "economic" hardship to be entitled to a variance.

For many years, Pennsylvania courts have grappled with the conflicts between the nonconforming use's constitutionally protected right of natural expansion and the power of municipalities to impose restrictions on conforming and nonconforming uses alike.

EXPANSION IN CONFLICT WITH USE REQUIREMENTS ONLY—THE INHERENT RIGHT OF A NONCONFORMING USE

The right to expand a nonconforming use to provide for the natural expansion and accomodation of increased trade "is a constitutional right protected by the due process clause." *Silver v. Zoning Board of Adjustment,* 435 Pa. 99, 102, 255 A.2d 506-07 (1969); *Gilfillan's Permit,* 291 Pa. 358, 140 A. 136 (1927). Accordingly, "a municipality cannot prohibit per se the natural expansion of a non-conforming use." *Silver,* 435 Pa. at 103, 255 A.2d at 508. Nevertheless, the Pennsylvania Supreme Court has stated that:

> [The right of expansion] is not unlimited, however. The contemplated expansion must not be detrimental to the public health, welfare and safety. We have never questioned the right of a municipality to impose reasonable restrictions on the expansion of a non-conforming use.

*Id.* at 103, 255 A.2d at 507. *See also Walter v. Philadelphia Zoning Board of Adjustment,* 437 Pa. 277, 281-82, 263 A.2d 123, 126 (1970).

## Expansion over previously-used area without encountering dimensional restrictions

Our Supreme Court has held that where the expansion of a nonconforming use, as here, is over property acquired *before* the adoption of a zoning ordinance establishing that use as nonconforming, the owner may enclose the open-air portion of his operation without obtaining a variance, provided that the open-air portion has been ''an integral part of the property used in the furtherance of the nonconforming purpose.'' *In Re Pierce's Appeal,* 384 Pa. 100, 106, 119 A.2d 506, 507 (1956). Apparently, the enlargement in that case did not run afoul of any dimensional limits in the ordinance.

## Expansion over area not previously used

However, if the open-air portion has not been lawfully used in furtherance of the use before the prohibition, but is reasonably necessary to accommodate the requirements of the natural growth of the business, the remedy "would be by way of a variance.'' *Id.*[2]

---

[2] A variance is also required to expand a nonconforming use to a portion of property acquired *after* the enactment of the zoning ordinance establishing that use as nonconforming. *Walter v. Philadelphia Zoning Board of Adjustment,* 437 Pa. 277, 263 A.2d 123 (1970).

*See also South Philadelphia Dressed Beef Co. v. Zoning Board of Adjustment,* 391 Pa. 111, 137 A.2d 270 (1958). The court held that where a variance is sought for property purchased after the enactment of a zoning ordinance, the line of cases of *Blanarik Appeal,* 375 Pa. 209, 100 A.2d 58 (1953), *Peirce Appeal,* 384 Pa. 100, 119 A.2d 506 (1956) and *Mack Zoning Appeal,* 384 Pa. 586, 122 A.2d 48 (1956), discussed *infra,* were distinguishable because each of these cases involved the extension of nonconforming uses to property acquired before the enactment of the applicable zoning ordinance.

Note that, with respect to adjacent property acquired *after* the prohibitory use provision has been enacted, the inquiry logically must focus primarily on whether the *new* lot, acquired with aware-

### EXPANSION ALSO IN CONFLICT WITH DIMENSIONAL REQUIREMENTS

Proposed expansions of nonconforming uses, in addition to conflicting with the use classification, also may encounter dimensional restrictions in zoning ordinances, such as: (1) those which impose dimensional limitations on *all* property within a particular zoning district classification, *e.g.*, height limitations and side yard regulations, and (2) those, directed specifically at nonconforming uses, which limit the expansion of such uses by specified percentage limitations, *e.g.*, as here, a limitation on the expansion of a nonconforming use building to 25% of its coverage at the time the zoning ordinance became effective. *See Humphreys v. Stuart Realty Corp.*, 364 Pa. 616, 73 A.2d 407 (1950), in which the court gave effect to a 25% structural expansion limit.

In *Mattero v. Township of Upper Chichester Zoning*, 38 Pa. Commonwealth Ct. 322, 325, 395 A.2d 584, 586 (1978), we recognized that the right to expand a nonconforming use "is subject to applicable zoning building regulations and the interest of the public health, safety and welfare," and rejected the argument of an owner of a nonconforming use that he was entitled as of right to expand an existing business so long as the expansion was a reasonable result of natural growth.

In *City of Philadelphia v. Angelone*, 3 Pa. Commonwealth Ct. 119, 280 A.2d 672 (1971), we upheld the constitutionality of an amendment to a zoning ordinance limiting any increase in the size of a building housing a nonconforming use to 10% of the size of the building at the time the original ordinance became ef-

---

ness of the prohibition, is itself subject to unnecessary hardship— *i.e.*, virtual unusability—or, on the other hand, can in itself be used in conformity with the current regulations.

fective.[3] We there indicated that a landowner who desired to expand in excess of percentage limitations had to obtain a variance.[4]

Furthermore, in *Grubb's Appeal,* 395 Pa. 619, 151 A.2d 599, 600-01 (1959), our Supreme Court expressly recognized that "an extension of a non-conforming use resulting in a violation of the area or dimensional requirements of an ordinance" requires a variance, subject to a showing of "unique and undue hardship to the property unless such use is permitted and that there is no detriment to the public interest if it is altered and used in the manner proposed."

Thus, the Supreme Court and this court have steadily indicated that *the rights of a nonconforming use are not such as to give it any greater standing than a conforming use in the same district;* either one will

---

[3] The ordinance provided:

[T]hat no additions to a structure containing a non-conforming use shall be made which, when added to all structural additions made since the use first became non-conforming, would cause the aggregate gross floor area of all such additions to exceed ten percent of the gross floor area of the structure when the use first became non-conforming.

*See also Schiller-Pfeiffer, Inc. v. Upper Southampton Township Board of Adjustment,* 1 Pa. Commonwealth Ct. 588, 276 A.2d 334 (1971) (50% expansion limitation upheld).

[4] Also Judge ROGERS there noted that, as to expansion *within the percentage limitation,* it had the effect of benefiting the owner of a nonconforming use by creating an exception to the rule expressed in *Peirce's Appeal,* that a nonconforming use can expand on property not previously used in furtherance of that use only by way of a variance:

Indeed, the effect of the provision is to broaden [applicants'] rights, not to narrow them. By it they may add to this non-conforming use to the extent it permits without proof of hardship or absence of injury to the public interest. Rather than diminishing rights, it confers them; for its effect is to require that only the excess of its allowance must be supported upon variance principles.

*Angclone,* 3 Pa. Commonwealth Ct. at 130, 280 A.2d at 677.

be allowed to go beyond ordinance dimensional limitations only if a variance is obtained.

## THE VARIANCE REQUIREMENTS AS APPLIED TO NONCONFORMING USE EXPANSION

The statutory embodiment of variance requirements now is Section 912 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10912. *Campbell v. Zoning Hearing Board of Plymouth Township,* 10 Pa. Commonwealth Ct. 251, 310 A.2d 444 (1973).

The criteria of Section 912 may be summarized as follows: (1) the property must possess unique physical circumstances; (2) those circumstances, in combination with the regulations, must cause unnecessary hardship—an unreasonable inhibition of usefulness of the property; (3) the hardship must not be self-inflicted; (4) the granting of a variance must not have an adverse impact on the health, safety and welfare of the general public; and (5) the variance sought must be the minimum variance that will afford relief. *See A & D, Inc. v. Zoning Hearing Board, East Nottingham Township,* 32 Pa. Commonwealth Ct. 367, 379 A.2d 654 (1977).

In the present situation, as noted above, the applicant's proposed expansion would violate ordinance requirements which sets a sideyard minimum of thirty feet and limit the expansion of a nonconforming use to 25%. Therefore, the applicant must obtain a variance even though this case, unlike *Angelone,* involves an expansion over property which has been used in furtherance of a nonconforming use.

We note that, in *Walter,* 437 Pa. at 282, 263 A.2d at 126, the Supreme Court made it plain that a nonconforming use expansion must "meet the *ordinary requirements* for the grant of a variance." (Emphasis supplied.) Thus, mindful of the fact that many of the

nonconforming use expansion precedents antedated the MPC, we nevertheless must look to the ordinary requirements for a variance as currently set forth in Section 912 of the MPC with a view toward reconciling them with the decisional line, so that a variance as to nonconforming use expansion might be seen as not intrinsically different from a variance as to other matters.

Section 912, for a variance, first requires finding:

(1)  That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical *or other physical conditions peculiar to the particular property,* and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located; (Emphasis supplied.)

The nonconforming use variance decisions have uniformly assumed, with little or no discussion, the existence of "unique physical . . . conditions," necessarily indicating that the pre-existing nonconforming use itself constitutes the physical "circumstances" which, apart from other lot or land characteristics, make the property uniquely different from others in the district. Existing use for trade unavoidably has a causal relationship to the "unnecessary hardship," with which the next subsection deals:

(2)  That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the *reasonable use* of the property; (Emphasis supplied.)

This subsection (2) (as subsection (3) reveals by reference back to it) is the unnecessary hardship requirement. Here we encounter the greatest difficulty in our reconciliation process because, unlike a use variance case involving a conforming use—where the hardship clearly consists of the virtual unusability of the land in its entirety for any permitted use—the land in a nonconforming use expansion case already has utility. The Supreme Court has not regarded the non-expansion of a nonconforming use, in itself, to constitute a hardship; in *Mack's Appeal,* 384 Pa. 586, 589, 122 A.2d 48, 50 (1956), where a variance was required apparently because of no previous nonconforming use of the specific area in question, the Supreme Court said:

It is true that the expansion of a nonconforming use does not in and of itself entitle the owner to erect structures on a portion of his land not previously occupied by his business enterprise, but it does constitute an important factor in the consideration of the question whether a variance should be granted for that purpose.

We note that *Mack* involved a variance because the expansion was over "new" land not previously used. That opinion does not tell us if the proposed expansion encountered dimensional or percentage limitations in the ordinance, those "reasonable restrictions" which give rise to the second class of nonconforming use expansion case in which a variance is required.

In *Mack,* apparently with no such dimensional or percentage restriction involved, the Supreme Court concluded:

[W]hile it was incumbent [upon petitioners] to establish that a refusal of the permit to build this one-room addition would result in an unnecessary hardship and would not be contrary to the public interest, they clearly met those con-

ditions. *Not only would such refusal prevent them from taking advantage of the normal increase of their business,* but it would not serve any useful purpose whatever. ... Certainly the right of the petitioners to obtain the variance under the circumstances is quite as clear as that of the applicant in Blanarik ... and Peirce ... where such variances were allowed. (Emphasis supplied.)

384 at 589, 122 A.2d at 50. Thus frustration of the need for "the normal increase" of the business, involving no public detriment (see below), was held to be a sufficient hardship basis for the variance when the expansion extended only over a new portion of the original property without transgressing any dimensional restriction imposed by the ordinance upon all uses, conforming as well as nonconforming, or exceeding any percentage limitation.

On the other hand, because any zoning ordinance provision is subject to the grant of a variance in a proper case, even such restrictions must bow if adhering to them would threaten the continued existence of the pre-existing use itself.

The variance concept has clearly served in part as an escape valve legislatively superinposed upon the zoning ordinance to save it from destruction through invalidation, by providing sufficient relief when an unreasonable mismatch occurs between the ordinance's rules and the situation of a particular property. This role remains clear when the variance is viewed in relation to the legal nonconforming use's inherent constitutional right to growth when growth is linked with its very existence.

As the Supreme Court said in *Silver,*

[t]he rationale behind the [nonconforming use expansion] doctrine can be traced to the due process requirements protecting private prop-

erty. If a person owns property which constitutes a valid non-conforming use, it is inequitable to prevent him from expanding the property *as the dictates of business or modernization require.* (Emphasis supplied.)

435 Pa. at 102, 255 A.2d at 507.

Accordingly, in studying the proper judicial balance between the interests of a nonconforming business use and the municipal power reasonably to restrict its expansion, we perceive the same distinction as that which has been well expressed in Ryan, *Pennsylvania Zoning Law and Practice,* §7.4.5 (1981), as follows:

[A]ny protection of the expansion right must relate to a protection of the preexisting use itself. Certain types of modernization or expansion are necessary to the survival of a commercial or industrial enterprise. Where the permission which the owner seeks falls in this category, protection of the nonconforming use itself requires that the right of expansion be recognized in the absence of evidence of a compelling injury to the public interest [citing Silver]. At the other extreme, some forms of expansion which have been permitted by the courts clearly are not essential either to preserve the use as a viable entity or to accommodate growth. . . . Expansion of this type probably is subject to regulation or prohibition by ordinance.

The more difficult and more usual case involves expansion which is not essential to a continuation of the business but is needed to provide for its normal growth. There is no general principle which allows a growing business to expand at the expense of the requirements of the zoning ordinance. . . . [A] rule which would prevent any increase in nonconforming businesses

would place these at a competitive disadvantage. Probably the correct line is a quantative one which would allow a municipality to restrict the growth of a nonconforming use to a percentage of the original use reasonably calculated to protect the community. . . .

Therefore, in the present case, where the application to expand faces sideyard limits generally applicable and also a percentage limitation directed at nonconforming use expansion in particular, entitlement to a variance for expansion beyond those restrictions must be based upon a showing that the proposal involves a modernization or other revision essential to the continued viability of the business as distinguished from merely "taking advantage of the normal increase" of the business. The next subsection requires

(3) That such unnecessary hardship has not been created by the appellant;

The most obvious application is to the use established contrary to a use classification after its enactment. A lawful nonconforming use, established before any prohibition can be known, does not invoke this subsection, unless a landowner knowingly takes subsequent action to place obstacles in the way of expansion.

Also, it is required

(4) That the variance, if authorized, will not alter the essential character of the neighborhood, or district in which the property is located, nor substantially or permanently impair the apropriate use or development of adjacent property, nor be detrimental to the public welfare;

The concern for protecting against detriment to the public interest, that is, to the neighborhood and the public welfare, has been expressed in virtually all of the Pennsylvania Supreme Court decisions discussing expansion of nonconforming uses. As in the quotation

from *Mack* above, this concern has been closely coupled with the necessity for a showing of hardship. *See also Blanarik Appeal* and *Peirce's Appeal.*

Finally, we have the requirement

> (5)  That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

This limitation regulates the balance between an owner's right to expand and a municipality's right to establish zoning requirements. Concern to allow the least modification can be seen in *Mack's Appeal*, 384 Pa. at 589, 122 A.2d at 50, where the court emphasized that the proposed nonconformity was "slight," and in *Grubb's Appeal*, where the proposed expansion did not increase the outer perimeter of the existing nonconformity.[5]

### APPLICATION To THE PRESENT CASE

Final resolution of the present case is complicated by the board's failure to make findings of fact. Its initial decision merely recited the testimony, pro and con, and then denied the variance with little intimation of its reasoning. After the common pleas court had remanded the case for the taking of additional evi-

---

[5] *Grubb* involved an "L" shaped building, which was a nonconforming use in violation of dimensional requirements of a zoning ordinance. The owner desired a variance to enclose the open portion of the "L," creating a rectangle. Although the proposed addition would have violated the dimensional requirements, the court upheld the issuance of a variance pursuant to a board finding that unique hardship had been shown, and that no detriment to the public interest existed because the proposed addition would not have increased the outer extent of nonconformity. The court said:

> The portions of the dwelling which are to be altered are presently non-conforming as to both the side-yard and setback requirements, for all practical purposes are presently as close to appellant's property as the entire building will be if the alteration is permitted.

dence, the board failed to use that further occasion to make findings of fact.

Normally, where the common pleas court, as here, has taken no additional evidence, the scope of review is limited to a determination of whether or not the board committed an abuse of discretion or an error of law, *Marwood Rest Home, Inc. v. Zoning Board of Adjustment,* 22 Pa. Commonwealth Ct. 567, 349 A.2d 800 (1976). The absence of findings by the board usually results in the necessity of remanding the case to the board so that it can fulfill that duty. However, in *Lando v. Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 312, 286 A.2d 924 (1972), Judge MENCER, in a cogent explanation of the scope of review, noted with emphasis that such a remand to the board for findings *"rests in the discretion of the court, the major considerations being the extent of the error and the effect on the parties of the delay attendant on a remand,"* (emphasis in original) citing Ryan, *Pennsylvania Zoning Law and Practice,* §9.4.23-24 (1970). *Id.,* 4 Pa. Commonwealth Ct. at 317, 286 A.2d at 927. As Mr. Ryan's cited passage usefully notes, this option is in accordance with MPC §1010, 53 P.S. §11010, which clearly states:

> If the record does not include findings of fact, or if additional evidence is taken by the court

---

*Grubb,* 395 Pa. at 623, 151 A.2d at 601. In finding that "unique and undue hardship existed," the court quoted from its opinion in *Blanarik Appeal,* 375 Pa. 209, 212, 100 A.2d 58, 59 (1953), and noted the relationship between hardship and public detriment:

> "Apparently Blanarik required some additional room for the normal increase of his business and it would be imposing a wholly unnecessary hardship upon him to prevent his taking advantage of that increase, while, on the other hand, the proposed extension to his building could not, in the remotest degree, be contrary to the public interest or militate against the general purpose of the ordinance. . . ."

*Id.* at 622, 151 A.2d at 601.

or by a referee, the court may make its own findings of fact based on the record below as supplemented by the additional evidence, if any. Here, the common pleas court understandably elected not to remand a second time but proceeded to arrive at its own findings of fact from the record.

As a matter of law, the opinion of the common pleas court expressly relied upon what the court saw as the applicant's "right to enclose the area already dedicated to the non-conforming use unless substantial harm to the public welfare can be shown to be a likely result of the construction," citing *Peirce*. However, this conclusion must be re-examined in the light of the legal principles discussed above because the common pleas court here did not deal with the point that, even where expansion over land already used is involved, it is not justified as a matter of right but requires a variance whenever it meets ordinance limitations. To be particularly noted is the fact that the validity of the 25% limitation here has not been attacked and the amendment enlarging the sideyard minimum from ten to thirty feet, although recently adopted, has not been challenged as discriminatory. Also to be remembered are: (1) the Supreme Court's declaration that nonconforming use expansion can be reasonably restricted, and (2) the principle that nonconforming uses have greater rights than conforming uses.

Hence there is still a need to apply the variance criteria, discussed above, to the facts as found by the common pleas court. The requirement of MPC §912 (1), concerning unique conditions, is not substantially in issue. Even though unique topographical features are not indispensable in nonconforming use variance cases, the lower court here indicated that physical problems at the rear of the property strongly ruled out expansion in that area, leaving only the proposed side area as a site for structural expansion roofing over

the business activity already conducted there in the open. With respect to MPC §912(2), the key problem of unnecessary hardship, our analysis above requires a finding that, in the face of the ordinance restrictions, the expansion or modernization by such enclosing must be a matter of necessity for the business rather than merely to take advantage of an increase in business. Although the common pleas court again overlooked the problem of the ordinance limitations by declaring that, as a matter of law, "[t]his expansion is a matter of right," the opinion also found as a matter of fact that "[t]estimony taken at the hearings of October 24, 1979 and May 22, 1980 did in fact prove business necessity."

*(Schneider, Inc. v. Zoning Board of Adjustment,* 389 Pa. 593, 133 A.2d 536 (1957) allowing a nonconforming dairy business to enclose an open loading platform without a variance, is not governing because that case involved no mention of any limiting ordinance provisions.)

Considering the total absence of board findings, we find the succinct findings of the common pleas court to be sufficient, in view of uncontradicted testimony concerning the inability to use the present building for certain work and the practical difficulty of pursuing that work outdoors.

As to MPC §912(4), the absence of public detriment, the common pleas court found that the public interest would be benefited rather than harmed by enclosing the work which is presently being done in the open. At the public hearings, none of the objections to the expansion were directed at the impact of the proposed addition. Instead, the objections involved complaints concerning existing parking problems and the building's present appearance. There was no evidence that the expansion would be detrimental to the public. If anything, the record indicates that the ex-

pansion would eliminate the present eyesore of trucks parked outside while awaiting repair. Refusal of a variance cannot be founded upon complaints directed toward the present nonconforming business; instead the consideration must be whether expansion would be detrimental to the public welfare. *Peirce's Appeal.*

Because the criteria of MPC §912(3), (5) have not been placed in issue, we conclude that the findings based upon the record, notwithstanding the lower court's legal statements concerning expansion by right, support the action of the court in its order, which reversed the board and expressly directing "that the requested variance be granted." We therefore affirm.

ORDER

Now, June 17, 1982, the order of the Court of Common Pleas of Montgomery County, dated September 15, 1980 at No. 79-23007, is affirmed.

Judge MENCER did not participate in the decision in this case.