520 A.2d 1226

Appeal of Horsham Township from the Decision of the Zoning Hearing Board of Horsham Township. In Re: Patch Up, Inc. Horsham Township, Appellant.

Argued December 9, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Linda Carol Post,* with her, *Thomas M. Del Ricci, Hamburg, Rubin, Mullin & Maxwell,* for appellant.

*Paul D. North, Duffy, North, Wilson, Thomas &
Nicholson,* for appellee, Zoning Hearing Board of
Horsham Township.

*Sean P. Flynn, Waters, Gallager & Trachtman,* for
appellees/intervenors.

OPINION BY JUDGE CRAIG, February 5, 1987:

Horsham Township appeals an order of the Court of
Common Pleas of Montgomery County, which affirmed
the order of the Zoning Hearing Board of Horsham
Township, granting applicant Patch Up, Inc., a variance
to expand its existing structure.

The applicant owns and operates, along with Nam-
corp, Inc., its lessee, a tavern, which it terms a "stopless
go-go bar," featuring live entertainment. The structure,
which predates the township's current zoning ordi-
nance, is located in an area of Horsham Township now
zoned I-2, and does not conform to the ordinance's use
or dimensional requirements.[1]

The applicant seeks to expand its existing structure
by 24.8% in order to increase the tavern's seating capac-
ity. However, the expansion would exacerbate the
present dimensional nonconformities; in particular, as

---

[1] In Finding of Fact No. 9, the zoning hearing board set forth
the existing setback dimensions of the applicant's property and
those required under the zoning ordinance.

9.  The plan shows that the premises does not conform
to the minimal zoning requirements as follows:

| | Required | [Existing] |
|---|---|---|
| Lot area | 4 acres | .836 acres |
| Frontage | 250 ft. | 199.96 ft. |
| Front yard(s) | 150 ft. | 41 ft. |
| Side yards | 75 ft. each | N. side-26 ft. 7 in. |
| | | S. side-over 75 ft. |
| Rear yard | 75 ft. | over 75 ft. |

proposed, the expanded structure would come within four feet and seven inches of the applicant's sideyard property line on the northern side.

Because the applicant did not, by cross-appeal, presently address its entitlement to expand as a matter of right by reason of an increase in trade, we do not address that issue, except to note that the trial court properly concluded that the right of nonconforming use expansion is not absolute, and that the property owner of a nonconforming use may expand beyond ordinance dimensional limitations only by obtaining a variance.[2] *Jenkintown Towing Co. v. Zoning Hearing Board of Upper Moreland Township*, 67 Pa. Commonwealth Ct. 183, 446 A.2d 716 (1982).

In order to establish entitlement to a variance for that purpose, the applicant has the burden of meeting each of the criteria set forth in section 912 of the Pennsylvania Municipalities Planning Code (MPC).[3] *Hager v. Manheim Township*, 23 Pa. Commonwealth Ct. 361, 352 A.2d 248 (1976).

> In *Jenkintown*, this court summarized those criteria. (1) [T]he property must possess unique physical circumstances; (2) those circumstances, in combination with the regulations, must cause unnec-

---

[2] In *Jenkintown*, this court stated:
The variance concept has clearly served in part as an escape valve legislatively superimposed upon the zoning ordinance to save it from destruction through invalidation, by providing sufficient relief when an unreasonable mismatch occurs between the ordinance's rules and the situation of a particular property. This rule remains clear when the variance is viewed in relation to the legal nonconforming use's inherent constitutional right to growth when growth is linked with its very existence.
67 Pa. Commonwealth Ct. at 193, 446 A.2d at 721.

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10912.

essary hardship—an unreasonable inhibition of usefulness of the property; (3) the hardship must not be self-inflicted; (4) the granting of a variance must not have an adverse impact on the health, safety and welfare of the general public; and (5) the variance sought must be the minimum variance that will afford relief.

67 Pa. Commonwealth Ct. at 190, 446 A.2d at 720.

Therefore, beyond the point at which nonconforming use expansion encounters dimensional barriers applicable in the district, the right of the nonconforming use to expand, and the entitlement of the nonconforming use to a variance to expand involve the same analysis.

In *Jenkintown,* this court stated:

[I]n studying the proper judicial balance between the interests of a nonconforming business use and the municipal power reasonably to restrict its expansion, we perceive the same distinction as that which has been well expressed in Ryan, Pennsylvania Zoning Law and Practice, §7.4.5 (1981), as follows:

'[A]ny protection of the expansion right must relate to a protection of the preexisting use itself. Certain types of modernization or expansion are necessary to the survival of a commercial or industrial enterprise. Where the permission which the owner seeks falls in this category, protection of the nonconforming use itself requires that the right of expansion be recognized in the absence of evidence of a compelling injury to the public interest. At the other extreme, some forms of expansion which have been permitted by the courts clearly are not essential either to preserve the use as a viable entity or to accommodate growth. . . . Expansion of this type probably is subject to regulation or prohibition by ordinance.

The more difficult and more usual case involves expansion which is not essential to a continuation of the business but is needed to provide for its normal growth. There is no general principle which allows a growing business to expand at the expense of the requirements of the zoning ordinance. . . . [A] rule which would prevent any increase in nonconforming businesses would place these at a competitive disadvantage. Probably the correct line is a quantitative one which would allow a municipality to restrict the growth of a nonconforming use to a percentage of the original use reasonably calculated to protect the community. . . .'

67 Pa. Commonwealth Ct. at 194-95, 446 A.2d at 721-22 (citation omitted).

With reference to Mr. Ryan's third criterion, which suggests a quantitative restriction upon the nonconforming use's right to expand, the present Horsham ordinance allows expansion up to a 25% increase of building area, but adds that:

[A]ny structure alteration, extension or addition shall conform with all the height, area, width, yard and coverage requirements for the District in which it is located.

Horsham Township Zoning Ordinance of 1969, *as amended,* art. XXIV, §2405.

The applicant's proposed expansion of 24.8% is within the permitted 25%, but, as the zoning hearing board found, the applicant's plan does not conform to the setback requirements in an I-2 district. Thus, the proposal indeed requires a variance.

In *Jenkintown,* we set forth the standard which such an applicant must meet to demonstrate entitlement to a variance:

> [W]here the application to expand faces sideyard limits generally applicable and also a percentage limitation directed at nonconforming use expansion in particular, entitlement to a variance for expansion beyond those restrictions must be based upon a showing that the proposal involves a modernization or other revision essential to the continued viability of the business as distinguished from merely 'taking advantage of the normal increase' of the business.

67 Pa. Commonwealth Ct. at 195, 446 A.2d at 722.

Therefore, we face the following pivotal question: Is the proposed expansion of the first variety suggested by Ryan, an expansion or modernization necessary for survival, as to which the right to expand must be accommodated by a variance subject only to injury to the public, or is it of the third variety, expansion only for business growth, not for survival, and therefore subject to quantitative limits and not entitled to a variance to transcend them? (Clearly, this proposal is not of the second variety, a nonconforming use expansion not encountering any ordinance dimensional limits.)

The zoning hearing board made the following findings:

> 12. The proposed dimensional variance sought is not harmful to the health, safety and welfare of the community.
>
> 13. The premises is subject to an unnecessary hardship in that the setback requirements, coupled with the location of the existing structure effectively bar any expansion. This impact is created by the present zoning classification.

In affirming the zoning hearing board, the trial court, referring to the standard which we applied in *Jenkintown*, concluded that the record demonstrates that approval of the applicant's proposal is essential to the continued viability of the business. The court stated:

The uncontradicted testimony at the hearing before the Board indicated the difficulty the tavern was having with maintaining its customers because of inadequate seating. Since this is straining the tavern's ability to meet its financial obligations, the expansion is necessary, not merely to take advantage of the normal increase in business, but is essential to the business' 'continued viability.' A denial of the variance would mean that the tavern would continue to lack adequate seating, would continue to lose patrons and income, and might ultimately be forced out of business.

Where, as here, the trial court took no additional evidence, this court's scope of review is limited to determining whether the board abused its discretion or committed an error of law. *Bellosi v. Zoning Hearing Board*, 96 Pa. Commonwealth Ct. 83, 506 A.2d 997 (1986).

Based upon our examination of the record, we must reject the trial court's statement that the variance is "essential to the continued viability of the business." The trial court, having taken no additional evidence, was not empowered to adopt that view as a finding. Moreover, the zoning hearing board did not adopt any such finding, an omission which is understandable because the record contains no substantial evidence to provide support for it.

Mr. Catagnus, the president and secretary of Patch Up, Inc., testified:

Q. And what is this addition? What do you propose to do with it?

A. To build and try to bring more capacity, to try to help—the people that are standing, we would like to have more seating. That's what I'm trying to do. . . . And the trouble is that a lot of the patrons do stand in the back. I've been

there. They stand in the back and they leave because we cannot give seating.[4]

Additionally, Edouard Junod, the president and secretary of Namcorp, Inc., which owns the business, testified:

> A. What we're trying to do is increase my profitability. As I say, we have been successful. The problem is that people don't have seats. . . . People are standing there and aren't spending as much money as if they had a seat. And they do come in and don't get seated. And the biggest complaint I have of the place is just that.

That testimony clearly indicates to this court that the applicant's main motivation, understandably, is to serve the additional clientele which the tavern cannot presently accommodate with seating. Despite the applicant's allegations of financial difficulty, the testimony suggests an establishment which is successful despite its small size rather than unsuccessful because of it.

Additionally, although Mr. Catagnus testified that Mr. Junod, on behalf of the business, occasionally had trouble paying the rent,[5] that hardship, here existing between the appellee and intervenor, does not consti-

---

[4] The logic underlying the applicant's theory of diminishing clientele is reminiscent of the comment attributed to legendary New York Yankee Yogi Berra: "Some restaurants are so crowded that no one goes there anymore."

[5] The trial court quoted John Catagnus, the president and secretary of Patch Up, Inc., who testified before the board:

> I own the property, and we were having problems with it when he would pay the rent. In other words, when he would pay me the rent, I couldn't cash the checks at certain times. And, also, the Junod Company also has to pay a thousand a week to pay a note to me, and he's having a very difficult time. And the trouble is that a lot of the patrons do stand in the back. I've been there. They stand in the back and they leave because we cannot give seating.

tute hardship for the purposes of granting a variance because it is self-created. In *Appeal of Gro,* 440 Pa. 552, 269 A.2d 876 (1970), the Supreme Court held that one who pays a high price for land based upon his assumption that he will be able to obtain a variance which would make his purchase profitable will not be excused from the effects of the ordinance notwithstanding present loss or prospective financial disadvantage. Mr. Junod's statement, "when I signed that lease agreement between Patch Up, Inc. and Namcorp, Inc., I did that with the intent that this was a nonconforming use, at least I could come in for twenty-five percent expansion," evidences a self-inflicted hardship.

The proposed expansion is not essential to continued viability of the business, but rather is desired by the applicant to accommodate normal growth. Therefore, because it fails to meet the criteria set forth in the Horsham Township Zoning Ordinance for the expansion of nonconforming uses beyond dimensional limits applicable to all uses, and because the applicant has failed to establish the requisite hardship required for the granting of a variance, the application must be denied.

ORDER

Now, February 5, 1987, the order of the Court of Common Pleas of Montgomery County, dated October 7, 1985, is reversed.