IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Keyes Family Limited : 
Partnership, Keyes Personal Residence : 
Trust, Keyes Family Partnership II, and : 
Gail Keyes from the Decision dated : 
September 26, 2013 of the Zoning : 
Hearing Board of East Whiteland : 
Township : 
 : 
Appeal of:  Keyes Family Limited : 
Partnership, Keyes Personal Residence : 
Trust, Keyes Family Partnership :    No. 2166 C.D. 2014
II, and Gail Keyes :    Argued:  October 5, 2015


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge[1]
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY               FILED:  January 28, 2016

        The Keyes Family Limited Partnership, the Keyes Personal Residence Trust, the Keyes Family Partnership II, and Gail Keyes (collectively, the Keyes) appeal the order of the Court of Common Pleas of Chester County (common pleas court) that affirmed the order of the Zoning Hearing Board of East Whiteland Township (Board) that granted a series of variances and a special exception with respect to the construction of a new building and other changes to be integrated as part of an existing dog grooming, "doggy daycare," and dog boarding business for the property located at 459 West Lancaster Avenue (459 Property) in East Whiteland Township (Township).

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

Michael Rizzo (Rizzo) is the owner of a limited liability company known as Karen's K-9 Care, LLC (K-9) and the 459 Property. Through a lease with the Keyes, Rizzo is the lessee of the property which is located at 457 West Lancaster Avenue (457 Property), immediately adjacent to the 459 Property. The Keyes are the owners of several properties in the immediate proximity of the 459 Property. Gail Keyes resides immediately north and adjacent to the 459 Property. A one story frame building and a smaller "cottage" structure are located on the 459 Property. The larger building is used for dog grooming and overnight boarding. The smaller structure is used for the storage of tools and equipment.

Rizzo and K-9 desired to construct an additional one story structure on the 459 Property to be used by K-9. The proposed structure would be an enclosed, weather-proof exercise building to house dogs when weather interfered with events. The new structure would not be used for overnight boarding. Overnight boarding would continue in the structure currently located on the 459 Property. Rizzo and K-9 also sought to provide an open-air play area in the front of the building adjacent to Lancaster Avenue with an artificial turf surface. K-9 holds a kennel license from the Commonwealth of Pennsylvania for one kennel on the two parcels of land.

The Keyes have owned the 457 Property since the 1970's. In or around 1999, the 457 Property was leased to Anthony J. Bannister (Bannister). The 457 Property had a two story building with six parking spaces. Bannister was a professional animal behaviorist. He appeared before the Board for a permit to use the 457 Property for the correction of animal behavior and the rehabilitation of

animals after surgery, and to convert the second floor of the building into an apartment for himself as caretaker of the animals. By decision dated April 26, 1999, the Board concluded that Bannister's proposed use of the first floor was a "professional and/or commercial office" and was permitted by right in that zoning district.

In or around 2000, Bannister's wife, Karen Walton-Bannister (Walton) formed K-9. At some time between 2000 and 2004, Walton began providing daytime and nighttime boarding for dogs at the 457 Property. In 2002, Walton purchased the 459 Property and began to use it for nighttime boarding, daytime grooming, and training.

In 2007, the Township amended the East Whiteland Township Zoning Ordinance (Ordinance). The 459 Property and the 457 Property were rezoned from C-3-Commercial to the VMX[2] district. The amended Ordinance also included a definition of "kennel" and permitted kennels in the FC "Frontage Commercial" district and as a use by special exception in the Industrial district. At some point, K-9 expanded its operation to include "doggy daycare" and obtained a kennel license. In 2011, Walton sold K-9 and the 459 Property to Rizzo.

On or about November 10, 2012, Rizzo and K-9 filed an application with the Board and sought a special exception in accordance with Section 200-102.B (expansion of a non-conforming use)[3] and variances from Section 200-93

---

[2]     VMX stands for "Village Mixed Use –Zoning District."
[3]     Section 200-102 of the Ordinance provides:
**(Footnote continued on next page…)**

A use that does not conform to the permitted use regulations of the district in which it is located may be enlarged when authorized as a special exception by the Zoning Hearing Board.  The enlargement shall be confined to the existing building within which the use has been conducted, and any increase in building size or floor area shall be in compliance with this Article XVI.  The Zoning Hearing Board shall authorize a special exception only in cases where the following conditions have been met:

(1) The proposed enlargement shall take place only upon the lot or contiguous lots held in the same ownership as that existing at the time the use became nonconforming.  Authorization to enlarge the nonconforming use, as described in this section, shall not be construed to mean that a new use or uses may be established.  A nonconforming use shall be prohibited from encroaching on another parcel of land subsequently added to the original parcel.

(2)  The proposed enlargement shall conform to the applicable development standards, buffer requirements, and parking requirements, as well as all other requirements of the district in which the enlargement is located or the district in which the use is a permitted use, whichever shall be more stringent.

(3)  Buffers shall be provided along property lines in accordance with Article XI, irrespective of whether adjoining tracts are across district boundary lines or within the same district as the subject tract.

(4)  Any increase in building or floor area shall not exceed 50% of the building area or gross floor area, whichever is less, that was existing at the time that the use became nonconforming under this or any previous Ordinance and, in any event, shall be permitted only by special exception under the provisions of this chapter.  Structures or land uses that have reached their maximum expansion allowance under previous Ordinances are not eligible for any increase in building or floor area under this chapter.  A structure that is nonconforming in terms of height shall not be enlarged so as to increase its height.

(location of fences, K-9 sought to install a fence six feet from the lot line where ten feet was required), Section 200-102.B(2) (to expand a non-conforming use in a manner that will not comply with other applicable area and/or bulk regulations), and Section 200-70 (to provide twelve off-street parking places where twenty-one were required) all under the Ordinance.

As part of the expansion, K-9 wished to construct a thirty-five by seventy foot building that would house dogs during the day, with doors that would open for circulation.

The Board held hearings on December 17, 2012, February 25, 2013, May 23, 2013, and June 24, 2013. Rizzo testified that he purchased K-9 on April 1, 2011. The purchase included the business, the 459 Property, a lease agreement, and a kennel license. Notes of Testimony, February 25, 2013, (N.T.) at 32-33; Reproduced Record (R.R.) at 112a-113a. Rizzo explained that his kennel license was not specific to a particular parcel. N.T. at 33; R.R. at 113a. From a review of K-9's records, Rizzo testified that Walton kept dogs overnight on both properties. N.T. at 34; R.R. at 114a. After he purchased the business, he boarded dogs on both properties. N.T. at 35; R.R. at 115a. Rizzo explained why he needed the structure:

> Well, we need to have it indoor[s]. It's too hot in the summer, too cold in the winter. On rainy days we need something with a covering. In order to compete with our competition, we need to have some kind of indoor facility; otherwise, we are dead in the water.

N.T. at 37; R.R. at 117a. He explained that it was safer and healthier for the dogs to be inside. N.T. at 37; R.R. at 117a. Rizzo wanted to have room for sixty dogs. N.T. at 40; R.R. at 120a.

5

Rizzo submitted into evidence the daily boarding records for K-9 which indicated there were days that dogs were boarded on the 459 Property from 2005 forward with one missing year. Notes of Testimony, May 23, 2013, (N.T. 5/23/13) at 29-31; R.R. at 173a-175a. Rizzo indicated that he would be willing to turn the building around, install soundproofing, landscaping and fencing. N.T. 5/23/13 at 32; R.R. at 176a. Rizzo testified that the new building was only for daytime use in hot, cold, or wet conditions. N.T. 5/23/13 at 33; R.R. at 177a.

Eric Schmied, a four year employee of K-9, testified that when he worked for Walton, dogs were boarded overnight on both properties. N.T. 5/23/13 at 25; R.R. at 169a.[4]

The Board granted the variance from the requirement of Section 200-102.B to limit expansion of a non-conforming use within buildings to fifty percent and allowed the construction of the new building. The Board granted the special exception to authorize the expansion of the existing, lawful, nonconforming use. The Board granted the variances with respect to parking and the setback of the fence and limited the size of the new building to thirty-five feet in depth by seventy feet in width with the details to be addressed by the Township Planning Commission and the Township Board of Supervisors. The Board also required the Applicants to install a sidewalk. The Board made the following relevant findings of fact:

---

[4] K-9 presented the testimony of an engineer, Nicholas L. Vastardis (Vastardis) who testified that the Property could comply with the East Whiteland Township Land Development Ordinance in terms of stormwater management. N.T. at 13; R.R. at 93a. Vastardis also testified in general about the plans for the Property.

23. In 2002, Karen Walton purchased the Subject Property and began using it for nighttime boarding and daytime grooming and training. . . .

24. In 2004, Karen Walton attempted to add a deck to the 459 (Rizzo) Property, which required a variance due to the then applicable rear yard setback, but eventually abandoned the application and reduced the size of the deck. The Application disclosed to the Zoning Officer and to the Zoning Hearing Board that the then-use of the Property at 459 was 'dog training and grooming.'

25. On February 21, 2007 the East Whiteland Board of Supervisors adopted a comprehensive new zoning ordinance and now includes a definition of 'kennel' and lists kennels as a permitted use in the FC 'Frontage Commercial' district and as a use by special exception in the Industrial District.
. . . .
50. In the course of denying another application from Mr. Rizzo in 2011 to use the Subject Property for his limousine business, the Zoning Hearing Board found that 'The current use of the property is in conjunction with Karen's Canine [sic] Care for grooming and other care of dogs. That business is carried both on the subject property and on the adjacent property to the east.' . . .

51. The Zoning Hearing Board also found in that decision that 'The Applicant is making reasonable use of the subject property, as he will continue to operate the Karen's Canine Care business on the property.' . . .
(Citations omitted.)

Opinion of the Zoning Hearing Board, September 23, 2013, (Opinion), Findings of

Fact Nos. 23-25 and 50-51 at 4-6; R.R. at 8a-10a.

The Board determined:

The Applicant [Rizzo and K-9] acknowledges that the combination of animal care uses carried on on the Rizzo Property (and as well on the 457 Property) would fall

7

within the scope of a 'kennel' operation, but the Applicant [Rizzo and K-9] argues that under the prior C-3 Zoning, the kennel-type usages were established not only on the 457 Property, but also on the Rizzo Property, which he purchased from the prior operator of Karen's K-9 (along with the business itself) in 2010. Consequently, the threshold issue facing this Board is whether the Applicant [Rizzo and K-9] has a vested right to continue dog grooming, dog boarding (daytime and/or overnight) and similar activities on the Subject Property, before we can rule on the specific elements of relief requested in the application.

We conclude that the Applicant [Rizzo and K-9] has, in fact, established a vested right to continue to use kennel-type activities on the Subject Property, for two reasons. First, the Subject Property became an integral part of the Karen's K-9 usage on the 457 Property, which was specifically approved by this Board in Appeal 99-10, as a matter of right. As the Zoning Hearing Board recognized that the use of the 457 Property for dog grooming, dog training and boarding was a use by right under the C-3 Zoning District, the expansion of this use to the adjacent (459) property now owned by Mr. Rizzo, did not require any further relief from the Board. . . .

First, it is clear that the kennel-related uses – again, permitted by right under the prior C-3 zoning regulations – was [sic] expanded into the Subject Property in the early 2000's [sic], prior to the filing by Karen's K-9 Care, LLC on March 31, 2004 of a request to expand a non-conforming structure by adding a deck, in conjunction with 'dog training and grooming,' as it was taking place on 459. . . . Given the additional evidence adduced by the Applicant [Rizzo and K-9] relating to the allocation of dog-related functions (day care, grooming, training and boarding ) between the two properties from the early 2000's [sic] through 2007 (when the C-3 Zoning was abrogated), it is clear that the Applicant [Rizzo and K-9] has here established a lawful, non-conforming use of the Rizzo Property [459 Property] (as well as the 457 Property) prior to the enactment of the 2007 Zoning Ordinance, which . . . rendered the kennel-

related uses no longer permissible in the VMX Zoning District.

. . . .

We find the Applicant's [Rizzo and K-9] argument, that the existing facility must be allowed to modernize and expand to the extent requested in order to remain competitive with other facilities offering doggy 'day care' and extended boarding for dogs and other small pets, to be credible and persuasive. Where, as here, the extent of the use is not being expanded (indeed, recent years have shown that the actual number of dogs boarded and/or taken care of during daytime hours has been reduced), but rather that portions of the existing use are proposed to be enclosed within a building, the 50% limitation of expansion is not dispositive. . . .

. . . .

The Applicant [Rizzo and K-9] proposes to comply with the applicable setback requirements for the proposed new building, and has committed, in discussions with the opponents to this application, to reduce the dimensions of the building to 35 feet in depth, by 70 feet in width. Likewise, the building would be set back 30 feet from the rear property line, adjacent to the Gail Keyes residence, rather than just the 10 feet required for a rear yard setback under the applicable development standards. . . . Consequently, we will grant the special exception to allow the new building to be constructed as proposed, subject to the imposition of conditions as will be set forth in our Order below.

Next, we deal with the question of the number of parking spaces. The Applicant [Rizzo and K-9] proposes to expand available parking to 12 parking spaces, where a total of 21 would be required under the Zoning Ordinance. We are satisfied that the Applicant's [Rizzo and K-9] argument, that there is no need for more than 12 parking spaces, is credible, and that strict imposition of the 21-space requirement would create unnecessary hardship for no public good.

Lastly, the Applicant [Rizzo and K-9] requests a de minimis variance to allow a fence 6 feet from the front lot line, instead of 10 feet as required. Again, this

> variance is necessary given the configuration of the property and the existing structures thereon, and the desire of the Applicant [Rizzo and K-9] to improve the facilities for his customers, in order to remain competitive with others in the industry. (Footnotes omitted.) (Emphasis in original.)

Opinion at 7-8, and 10-11; R.R. at 11a-12a and 14a-15a.

The Keyes appealed to the common pleas court and asserted: the Board erred when it granted the special exception because Rizzo and K-9 failed to establish that the use of the subject 459 Property constituted a lawful, non-conforming use, that the Board erred when it granted the variance with respect to the fence because that was not requested in the application, that the Board erred when it failed to adequately consider the effect of the requested relief on the public health, safety, and welfare, and that the Board applied incorrect legal standards. The Keyes also argued: that Rizzo and K-9 failed to satisfy the requirements of a variance in that they failed to demonstrate hardship, the 459 Property could not be used in a manner consistent with the Ordinance, and the requested relief was not the least modification necessary.

The common pleas court affirmed:

> Appellant presents two (2) issues for us to resolve on this appeal: 1) Was it error for the Board to determine that there existed a lawful non-conforming use; and 2) Was it error for the Board to determine that the evidence supported the grant of dimensional variances? There was more than sufficient evidence to support the Board's conclusions on these issues so they cannot be reversed by this Court. Once it has been established that there exists a lawful non-conforming use, the doctrine of natural expansion comes into play. 'The property owner has the vested constitutional right to a natural expansion of a

10

nonconforming use. . . . As the Supreme Court explained, '[a]n Ordinance which would allow the housing of a baby elephant cannot evict the animal when it has grown up, since it is generally known that a baby elephant eventually becomes a big elephant.'' . . . . Under the doctrine of natural expansion, 'a nonconforming use may be extended in scope, as the business increases in magnitude over ground occupied by the owner for the business at the time of the enactment of the zoning ordinance.' . . . . The municipality may impose reasonable restrictions on the extension of a nonconforming use. . . . However, 'an overly technical assessment of [a nonconforming] use cannot be utilized to stunt its natural development and growth.' . . . . 'The fact that a proposed expansion is sizable does not render the expansion unreasonable per se.' . . . . The Zoning Hearing Board issued a thorough and well thought out opinion in support of its decision. We have reviewed that decision and the record before the Zoning Hearing Board on the basis of the foregoing legal considerations and principles. Applying that law to the facts of this case, we cannot say that the Zoning Hearing Board committed an error of law or abused its discretion and, therefore, the decision of the Zoning Hearing Board must be affirmed. (Citations omitted.).

Common Pleas Court Order and Opinion, October 27, 2014, n. 1 at 2.[5]

The Keyes contend that the Board committed an error of law and/or abused its discretion when it found: that Rizzo and K-9 demonstrated that the use of the 459 Property for dog grooming, training, day-care, and boarding constituted a lawful non-conforming use, when it concluded that Rizzo and K-9 demonstrated

---

[5] When the Keyes appealed to this Court, the common pleas court issued an opinion which stated that the Keyes failed to preserve any issues for appeal in the concise statement of errors complained of on appeal. However, upon review of the record before the common pleas court, this Court is satisfied that the Keyes raised the issues before the common pleas court that they now raise before this Court.

11

that they were entitled to the requested Special Exception pursuant to Section 200-102 of the Ordinance that permitted the expansion of a lawful non-conforming use, when it concluded that Rizzo and K-9 demonstrated that there were unique physical circumstances or conditions peculiar to the 459 Property that were not circumstances or conditions generally created by the provisions of the Ordinance, when it concluded that Rizzo and K-9 demonstrated that absent the grant of the requested relief the 459 Property will be subjected to an unnecessary hardship, when it concluded that a variance was necessary to enable Rizzo and K-9 to reasonably use the 459 Property, when it concluded that the Applicants demonstrated that the requested relief represented the least modification necessary to enable a reasonable use of the 459 Property, and when it concluded that Rizzo and K-9 demonstrated that the unique physical conditions of the 459 Property alleged to inflict the necessary hardship were not self-created.[6]

Initially, the Keyes contend that Rizzo/K-9 failed to establish that the use of the 459 Property was a lawful nonconforming use. The Keyes assert that Rizzo failed to establish that the 459 Property was ever lawfully used as a kennel, doggy daycare and/or a grooming, training, and boarding facility.

An owner asserting the protected status of a nonconforming use has the burden of proving that the use pre-dated the pertinent ordinance. Appeal of

---

[6] In zoning cases, where, as here, the common pleas court did not receive any additional evidence, this Court's review is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discretion. Hogan, Lepore & Hogan v. Pequea Township Zoning Board, 638 A.2d 464 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 647 A.2d 905 (Pa. 1994).

12

Lester M. Prange, Inc., 647 A.2d 279 (Pa. Cmwlth. 1994). The nonconforming use which is within the orbit of protection of the law and the Constitution is a nonconforming use which existed at the time of the passage of the zoning ordinance or the change in use district under a zoning ordinance, not a new or different nonconforming use. Hanna v. Board of Adjustment of Borough of Forest Hills, 183 A.2d 539 (Pa. 1962). It is the burden of the property owner to establish that the use existed before the enactment of the zoning ordinance and that the use was lawful. Hafner v. Zoning Hearing Board of Allen Township, 974 A.2d 1204 (Pa. Cmwlth. 2009). The property owner must provide objective evidence of the extent, nature, time of creation, and continuation of the alleged nonconforming use. Jones v. Township of North Huntingdon Zoning Hearing Board, 467 A.2d 1206 (Pa. Cmwlth. 1983).

The Board found that the use of the 459 Property for a kennel and dog boarding was legal in 1999 when Walton started using the 457 Property for dog boarding because the zoning ordinance in effect at that time did not define a "kennel" or provide, by name, for a kennel as a permitted use in any zoning district. In 2002, Walton purchased the 459 Property. By 2004, the 459 Property was also used for dog training and grooming. In 2004, Walton requested a variance to add a deck to the building on the 459 Property. The variance was needed from the applicable rear yard setback. Although Walton ultimately withdrew the variance application because she reduced the size of her deck, on the application she listed the use of the 459 Property as "dog training and grooming." Further, Rizzo testified that based on a review of K-9's business records that the 459 Property was used for boarding at times since at least 2005.

13

The current Ordinance went into effect in 2007. The 459 Property was zoned VMX and a kennel was not a permitted use in the VMX District. However, substantial evidence supports the Board's determination that the 459 Property was used for dog grooming and boarding prior to 2007, at least since 2004. The common pleas court did not err when it determined that Rizzo's use of the 459 Property was a legal nonconforming use.[7]

The Keyes next contend that Rizzo and K-9 failed to present substantial evidence that satisfied the required elements for the requested variances. The Keyes do not really address each individual variance but assert that Rizzo and K-9 failed to meet the same general burden for each of them.

The standard requirements for a variance are contained in Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC),[8] which provides:

> (a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance provided that all of the following findings are made where relevant in a given case:

---

[7] The Keyes' argument that Rizzo and K-9 are not entitled to a special exception for the expansion of a valid nonconforming use is predicated upon their position that Rizzo and K-9 failed to establish a valid nonconforming use. As this Court has determined that the Board did not err when it found that Rizzo and K-9 proved there was a valid nonconfoming use, this Court need not address this issue.

[8] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10910.2. This section was added by the Act of December 21, 1988, P.L. 1329.

14

1) there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

2) because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

3) such unnecessary hardship has not been created by the appellant;

4) the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

5) the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

In Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township, 446 A.2d 716 (Pa. Cmwlth. 1982), this Court set forth the standard for a variance to expand a nonconforming use. In Jenkintown, Jenkintown Towing Service (Jenkintown) operated a vehicle towing and repair business which qualified as a nonconforming use in a C-1 commercial zone in Upper Moreland Township (Upper Moreland). Jenkintown requested a variance to

15

allow the construction of an addition to the existing two story building, which would enclose a site that was used for truck repair. Jenkintown's addition would use retaining walls that were built under a valid permit in 1978 and would leave the structure five feet from the side boundary line in violation of the Upper Moreland Township Zoning Ordinance which limited the minimum side yard setback at thirty feet and limited the expansion of a nonconforming use to twenty-five percent of the building area as it was calculated at the time the use became nonconforming. The Upper Moreland Township Zoning Hearing Board (ZHB) denied the variance request. Jenkintown appealed to the Court of Common Pleas of Montgomery County which remanded to the ZHB for the purpose of taking additional testimony regarding Jenkintown's hardship. The Court of Common Pleas of Montgomery County reversed. Upper Moreland appealed to this Court and contended that where the proposed expansion of a nonconforming use conflicts with zoning requirements, the applicant must show more than economic hardship to be entitled to a variance. Jenkintown, 446 A.2d at 717-718.

This Court analyzed the variance language of the MPC in conjunction with case law regarding the expansion of a nonconforming use. With respect to the requirement that there be physical conditions peculiar to the property, this Court explained, "The nonconforming use variance decisions have uniformly assumed, with little or no discussion, the existence of 'unique physical . . . conditions, 'necessarily indicating that the pre-existing nonconforming use itself constitutes the physical 'circumstances' which, apart from other lot or land characteristics, make the property uniquely different from others in the district." Jenkintown, 446 A.2d at 720.

16

Similarly, with respect to the requirement of an unnecessary hardship, this Court reviewed the MPC and applicable case law and concluded:

> [W]here the application to expand faces sideyard limits generally applicable and also a percentage limitation directed at nonconforming use expansion in particular, entitlement to a variance for expansion beyond those restrictions must be based upon a showing that the proposal involves a modernization or other revision essential to the continued viability of the business as distinguished from merely 'taking advantage of the normal increase' of the business.

Jenkintown, 446 A.2d at 722.

As to whether the proposed variance would alter the essential character of the neighborhood or be detrimental to the public interest, the Court determined that an applicant for a variance must establish that there would be no detriment to the public coupled with its own unnecessary hardship. Jenkintown, 446 A.2d at 722.

Here, the Keyes challenge whether K-9 established that there was a unique physical condition of the 459 Property which necessitated the grant of a variance. However, pursuant to Jenkintown, the pre-existing nonconforming use of the 459 Property serves as the unique physical condition.

The Keyes also challenge whether K-9 established that there was a hardship that required a variance. Under Jenkintown, K-9 had to establish that the proposal was essential to the continued viability of the business. The Board found based primarily on Rizzo's testimony that while K-9 was one of the first businesses

17

to offer "doggy daycare," there were now several other companies providing the same service in the Township and other nearby areas. These newer facilities offer indoor play and artificial turf surfacing. Opinion, Findings of Fact Nos. 39-40 at 5; R.R. at 9a. The Board also found that K-9 could not remain competitive with the newer daycare providers without creating an enclosed space and artificial turf surfacing. Opinion, Finding of Fact No. 41 at 5; R.R. at 9a. This Court agrees with the Board that K-9 satisfied the hardship requirement.

With respect to the requirement that a proposed variance has no negative impact on the surrounding neighborhood, the Keyes assert that K-9 failed to present any evidence on this issue. The Board heard testimony from Rizzo that K-9 would take precautions to insure that the impact on the surrounding neighbors would be minimal. The Keyes also fail to assert exactly what the adverse impact would be. This Court finds no error by the Board or the common pleas court.[9]

Accordingly, this Court affirms.

_____
BERNARD L. McGINLEY, Judge

---

[9] Although the Keyes raise the issue of whether the variances represented the least modification necessary in the Statement of the Questions Involved in their brief, they fail to address this issue in the argument section of their brief. Consequently, it is waived. See Van Duser v. Unemployment Compensation Board of Review, 642 A.2d 544 (Pa. Cmwlth. 1994). (Issues not briefed are waived).

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Keyes Family Limited :
Partnership, Keyes Personal Residence :
Trust, Keyes Family Partnership II, and :
Gail Keyes from the Decision dated :
September 26, 2013 of the Zoning :
Hearing Board of East Whiteland :
Township :
                                                   :
Appeal of:  Keyes Family Limited :
Partnership, Keyes Personal Residence :
Trust, Keyes Family Partnership :     No. 2166 C.D. 2014
II, and Gail Keyes :

# **O R D E R**

AND NOW, this 28th day of January, 2016, the order of the Court of Common Pleas of Chester County in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge