312

Lando, et ux. *v.* Springettsbury Township
Zoning Board of Adjustment.

Argued January 4, 1972, before President Judge
BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR.,
MENCER, ROGERS and BLATT.

*John F. Rauhauser, Jr.,* for appellants.

*George M. Elsesser, Jr.,* with him *Wogan, Elsesser
& Yost,* for appellee.

OPINION BY JUDGE MENCER, February 2, 1972:

This is an appeal from the order of the Court of Common Pleas of York County affirming the refusal of the Zoning Board of Adjustment (now Zoning Hearing Board) of Springettsbury Township (Board) to grant a variance applied for by Mark R. Lando and Vivian J. Lando, his wife (appellants), and refusing appellants' petition to take additional testimony concerning the matter.

Appellants (in their own words) "under threat of prosecution, instigated by the sole protestant, a former township official, without counsel and in compliance with the direction of the Township Zoning Officer, filed an application for a variance[1] to permit them to continue to maintain horses for their personal use upon their property which contains a substantial, well appointed four-stall stable with an attached tack room. The building . . . opens onto a fenced in tract of land of approximately 4½ acres. Approximately twenty feet [distant] is an adjoining property similarly situated with a residence, barn and stable. Horses have been maintained there for more than 20 years past, to and including the present date. The sole protestant's property line was variously estimated at being 250-450 [feet] distant from petitioners' stable. Horse trails and bridle paths abound in the immediate area, one being only 200 yards from the property in question."

Appellants argue that none of the sections of the township ordinance "cited by the Zoning Officer, the counsellors or the Court prohibits the use applied for

---

[1] As appellants brief, p. 4, states: "At the direction of the Zoning Officer, without benefit of counsel, the Appellants filed an 'application' for permission to keep the horses [in this R-2 Zone]. This was, of course, the technical application for a variance which the Zoning Officer directed should be filed as being necessarily required."

by the Appellants,"[2] and that "it may reasonably be argued that the keeping or stabling of horses in a build-

---

[2] The applicable sections of the ordinance, in pertinent part, are as follows:

"SECTION 100. Purposes. This Ordinance is enacted for the following purposes: to promote the health, safety, morals, and general welfare of the inhabitants of the Township of Springettsbury by lessening congestion in the roads and streets; securing safety from fire, panic and other dangers; providing adequate light and air; preventing the overcrowding of land; avoiding undue concentration of population; facilitating the adequate provision of transportation, water, sewage, schools, parks, and other public requirements; conserving the value of buildings; and encouraging the most appropriate use of land."

. . . .

"SECTION 103. *Definition of Terms.* . . .

"2. ACCESSORY BUILDING: A building subordinate to and detached from the main building on the same lot and used for purposes customarily incidental to the main building.

"3. ACCESSORY USE: A use customarily incidental and subordinate to the principal use or the main building and located on the same lot with such principal use or main building.

"4. AGRICULTURE: The tilling of the soil, the raising of crops, horticulture and gardening."

. . . .

"24. BUILDING: Any structure on a lot, having a roof supported by columns or walls and intended for the shelter, housing or enclosure of persons, animals, or chattels, and including covered porches or bay windows and chimneys."

. . . .

"42. DWELLING, SINGLE FAMILY, DETACHED: A building used by one (1) family, having only one (1) dwelling unit, and having two (2) side yards."

. . . .

"56. GARDENING: The cultivation of herbs, fruits, flowers, or vegetables, excluding the keeping of livestock."

. . . .

"91. RIDING ACADEMY: An establishment where horses are kept for riding or driving, or are stabled for compensation, or incidental to the operation of any club, association, ranch, or similar establishment."

. . . .

ing designed solely for such use is 'an accessory use' (Sec. 401(6)) allowable and within the contemplation of the permitted uses of single family detached dwellings (401(1)) or agricultural or gardening uses (401 (2)). Nor is such use prohibited by the purposes enumerated for an R-2 zone (Sec. 400) or the ordinance generally (Sec. 100)."

"103. STABLE, PRIVATE: An accessory building in which horses are kept for private use and not for hire, remuneration, exhibition, or sale.

"104. STABLE, PUBLIC: A building in which any horses are kept for remuneration, hire, exhibition, or sale."

. . . .

"SECTION 400. *Purpose.* The purpose of the R-2 Residence District is to provide reasonable standards for the orderly expansion of urban-type residential development in sections of the Township with moderate sloping land, to prevent the over-crowding of the land, to exclude activities of a commercial or industrial nature and any activities not compatible with residential development, and to otherwise create conditions conducive to carrying out the purposes of this Ordinance as set forth in Section 100.

"SECTION 401. *Use Regulations.* A building may erected or used, and a lot may be occupied, for any of the following purposes and no other: 1. Single-family detached dwellings; 2. Agriculture or gardening; . . . 6. Accessory use on the same lot with and customarily incidental to any of the above permitted uses, and which may include a home occupation."

. . . .

"SECTION 1200. *Use Regulations.*

"1. Animals and Poultry: In districts where permitted, operations involving the use of buildings and land for farming, nurseries, and greenhouses, riding academies, livery or boarding stables, dog kennels, animal hospitals, stock raising, dairying and poultry shall be subject to the following safeguards and regulations:

"a. Buildings in which animals or poultry are kept shall not hereafter be erected within three hundred (300) feet of any lot line.

"b. Storage of manure or odor or dust producing substance shall not be permitted within three hundred (300) feet of any lot line."

Our scope of review, since the lower court took no additional testimony, is limited to the question of whether the Board committed a manifest abuse of discretion or an error of law. *Rees v. Zoning Hearing Board of Indiana Township,* 2 Pa. Commonwealth Ct. 551, 279 A. 2d 354 (1971). However, the Board made no findings of fact but simply stated the following conclusion: "The applicant has failed to meet the burden imposed upon him by law of producing evidence which shows that the literal enforcement of the Zoning Ordinance causes unnecessary hardship, of a substantial and compelling force, other than economic, which is peculiar and unique to his property alone as distinguished from other properties in the district, or that the spirit of the ordinance would be observed and substantial justice done by granting the application, and the Board, therefore, is prohibited by law from granting the application, and the same is, therefore, refused." (R. 61a)

Therefore, as we recently stated in *Mill-Bridge Realty, Inc. v. Zoning Board of Adjustment and Amish-Dutch Inns, Inc., additional party,* 4 Pa. Commonwealth Ct. 157, 161, 286 A. 2d 483 (1972), "Unfortunately based on the present state of the record, we cannot properly exercise even our limited function of review, for while we have an ample record before us containing the complete testimony presented to the Board as well as all the exhibits relating to the proposed [use], we are unable to determine on what basis the Board made its decision. Were we to make an independent review of the record and to make a decision as to the propriety of the [Board's decision], we would be assuming the role assigned to the Board."

Both Section 908(9) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. (Act No. 247), Article IX, §908, 53 P.S. §10908(9), and case law require that the Board issue an opinion which

sets forth the essential findings of fact and sufficient of the Board's reasoning to show that its action was reasoned rather than arbitrary. *See Lindquist Appeal,* 364 Pa. 561, 564-5, 73 A. 2d 378, 380-1 (1950). In addition, Section 912 of the Code, 53 P.S. §10912, requires (at least by implication) specific findings in variance cases. *See BJM Urban Development Corporation v. Fayette County Zoning Hearing Board,* 1 Pa. Commonwealth Ct. 534, 275 A. 2d 714 (1971). Other recent decisions have adopted the course of remanding the case to the Board for correction of the error if the Board has not rendered a proper opinion. *See Brennen v. Whitehall Township Board of Adjustment,* 33 Lehigh Co. L. J. 94 (1968), and *Ajdaharian v. Lower Southampton Township Board of Adjustment,* 19 Bucks Co. L. Rep. 3 (1969). We hold that *whether this sanction is or is not appropriate rests in the discretion of the court, the major considerations being the extent of the error and the effect on the parties of the delay attendant on a remand. See generally* R. Ryan, *Pennsylvania Zoning Law and Practice,* §§9.4.23-24 (1970). In no event, however, is our present decision to be construed in any sense as granting a license to Zoning Hearing Boards to gain delay simply by failing to make appro· priate findings of fact, thus imposing "either a general or selective moratorium on local land development. However much a rapidly expanding municipality may wish to declare 'time out' and stop all development, such effect, by whatever means achieved, would be constitutionally impermissible. Moreover, even aside from questions of improper purpose, it is to be emphasized that the various governmental authorities charged with the responsibility of proposing, promulgating and administering local zoning and planning laws are under a basic duty to act reasonably." *Boron Oil Company v. L. C. Kimple,* 445 Pa. 327, 284 A. 2d 744, 747-8 (1971).

In view of our intention to refer the record back to the Board for the purpose of making findings of fact and the stating of reasons for its decision, we shall not now pass upon the merits of the appeal. We note, however, in light of what amounted to a false start by appellants (see note[1], *supra*), and in consideration of their "accessory use" argument made after retaining counsel, that the Board should consider avoiding the anomalous proposition, now resulting in this R-2 Zone, that a property owner can conceivably use his horse for agriculture but not horsemanship (or, more properly, cultivation but not equitation). *See, e.g., Panati v. Zoning Board of Adjustment,* 22 D. & C. 2d 752 (Montg. 1960), and *Von Gerbig v. Marshall,* 13 Ches. Co. Rep. 47, 36 D. & C. 2d 133 (1964).

Order reversed and remanded to the lower court for its remand to the Springettsbury Township Zoning Board of Adjustment with a directive that the Board formulate findings of fact and conclusions of law together with the reasons therefor in support of its decision as to appellants' application to stable horses on their property.