**ROBAL ASSOCIATES, INC.**

v.

**BOARD OF SUPERVISORS OF CHARLESTOWN TOWNSHIP,
Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 19, 2010.

Decided June 23, 2010.

---

5. Act of June 2, 1915, P.L. 736, *as amended,* added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1.

Mark P. Thompson and Scot R. Withers, West Chester, for appellant.

James S. Tupitza, West Chester, for appellee.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge SIMPSON.

We granted reconsideration in this land use appeal to again analyze whether the Board of Supervisors of Charlestown Township (Board) erred in denying the application of Robal Associates, Inc. (Robal) for tentative approval of a Planned Residential Development (PRD) and for associated conditional uses. As part of our grant of reconsideration, we withdrew our prior opinion, which affirmed the decision of the Court of Common Pleas of Chester County (trial court). Essentially, the trial court determined that the Board's denial decision was substantially incomplete, and it remanded the matter to afford Robal an opportunity to revise its plans and to allow the Board to more fully address numerous issues.

## I.

Much of the background in this hotly contested litigation is set forth in our prior

opinion and can be summarized as follows. In April, 2004, Robal filed an application with the Board seeking tentative approval of a PRD. The PRD would include 10 single family detached dwellings and 40 townhouses on approximately 30 acres of unimproved land (property).

After hearings on the PRD commenced, Robal filed an application for conditional uses to permit the construction of multiple uses associated with the PRD in high ground water areas and open space. Thereafter, the Board combined the hearings with respect to both applications.

Ultimately, in June, 2007, the Board rendered its decision rejecting the tentative plan. The Board found that at the time of the PRD application the property was located in the PRD–1 zoning district. The zoning was thereafter changed, and that it is now located in the Farm Residential FR–1 zoning district. The Board applied the prior zoning provisions to the application.

The property is bound by two access ways. Sycamore Lane is to the northeast and Broadwater Lane is to the southwest. Sycamore Lane is a cul-de-sac street as defined by the Township Zoning Ordinance (Ordinance). Broadwater Lane is a private lane. Although it contains 30 acres, the property is shaped in a peculiar cross-like configuration. The property is predominately wooded, and the northeastern portion of the property adjacent to Sycamore Lane contains areas of high ground water. The property is surrounded by 14 adjacent residential properties.

Robal proposed accessing the PRD by construction of Road A and Road C, which both enter onto Sycamore Lane. Robal proposed to widen Sycamore Lane by 10 feet along the property's frontage to a width of 24 feet.

The Board made findings of fact and conclusions of law with respect to the applications. The Board determined that although Robal presented several revisions to its original PRD, and despite multiple issues being raised, Robal failed to comply with the objective criteria of the Ordinance for PRD approval. Notwithstanding the unusual configuration of the property, Robal could have complied with the Ordinance requirements. Robal instead chose to maximize the number of units at the expense of compliance with the Ordinance.

Significant for current purposes, the Board determined that the PRD plan did not contain sufficient "open space" as required by Section 605 of the Ordinance. Specifically, the tentative plan did not set aside at least 50% of the land for qualifying open space. Bd. Op., Findings of Fact (F.F.) Nos. 39–52. In this regard, the proposed sledding hill near several residential buildings and roads did not qualify as open space. Removing 1.718 acres representing the areas of grading for buildings and roads from open space calculations reduced to under 50% the area devoted to qualifying open space. F.F. Nos. 34, 50–52.

Further, the tentative plan did not devote at least 25% of open space to acceptable active recreation and associated facilities, an open space performance standard set forth in Section 1504.E of the Ordinance. F.F. Nos. 60–82. The open space performance standard was not met because the proposed Frisbee Golf Course and the sledding hill near the residential buildings did not demonstrate safe and acceptable active open space.

Also, the Board found that proposed Road A and Road C were structures as defined in the Ordinance, and would violate a perimeter setback requirement. Additionally, the Board concluded that Robal failed to provide for adequate stormwa-

ter controls. As to Robal's conditional use applications, the Board denied them without detailed fact-finding. It concluded that because the conditional uses were proposed in conjunction with the PRD, and the PRD did not meet objective requirements of the Ordinance, the proposed conditional uses could not be considered to be in compliance.

## II.

On appeal, the esteemed trial court issued an extensive opinion and an order affirming in part, reversing in part and remanding to the Board for proceedings on both the PRD application and the conditional use applications. Generally, the trial court noted the contentious nature of the process,[1] and the lack of findings supporting the Board's disposition of many issues.

Of particular concern for our review, the trial court addressed the open space issues. It observed that the deficiencies noted by the Board were driven by its belief that the property is being asked to accommodate more housing units than are reasonably feasible at the expense of required open space and active recreation facilities needed to serve the PRD's residents. As to the 50% minimum open space requirement, the trial court determined that the Ordinance does not allow "[c]ut and fill other than in association with any uses related to [open space]" to be counted toward the minimum. Thus, cut and fill related to housing units, such as cut and fill associated with the "sledding hill," need not be counted toward the open

space minimum. Because the Board's position on this point was consistent with the unambiguous Ordinance provisions, the trial court deferred· to the Board. Tr. Ct., Slip Op., 9/26/08, at 26. The significance of this determination is the trial court agreed that by not counting the area of cut and fill associated with housing units as open space, the tentative plan did not meet the 50% minimum open space requirement.

Regarding the 25% open space performance standard, the trial court acknowledged the findings pertaining to the "sledding hill" immediately to the rear of housing units: it was not designed as a recreational use, but rather was created from grading required to permit construction of housing units; and, it is located in such close proximity to those units as to create a safety hazard. Tr. Ct., Slip Op., 9/26/08, at 28–29. After discussing this and other open space performance standard issues, the trial court stated, "On this record, however, I cannot conclude that the Board exceeded its authority or abused its discretion in making these findings and conclusions, nor may I substitute my judgment for the Board's." Tr. Ct., Slip Op., 9/26/08, at 29. The significance of this determination is the trial court agreed that at least the "sledding hill" did not meet open space performance standards.

The trial court thoroughly discussed all issues raised by the parties, including the design and placement of roads, sufficiency of stormwater controls and the conditional use application. It ruled either that the

---

1. In its 1925(a) Opinion issued after appeal, *Trial Court, Slip Opinion,* 12/3/08, at 3, the trial court wrote in pertinent part:

   The Court will also note that the Township previously changed the zoning on Robal's property from PRD–1 to F–1 Farm Residential while its original single-family subdivision plan was under consideration, and be-

   fore it could file its tentative PRD plan, which move Robal successfully challenged in this court. However, it is this court's belief that Robal's property remains subject to the F–1 Farm Residential classification, which would preclude Robal's ability to file a new PRD zoning application.

Board erred or that there were insufficient findings to support the Board's decision on these issues. The trial court reasoned that the Board's failure to make findings and conclusions and the failure to describe the criteria it relied upon in making certain determinations violated Section 913.2(b)(1) of the Pennsylvania Municipalities Planning Code,[2] 53 P.S. § 10913.2(b)(1) (when application for conditional use denied, governing body shall attach to decision findings of fact and conclusions based thereon) warranting a remand. The trial court further stated, "If the PRD Plans are further revised consistently with this opinion, the Board's findings and conclusions shall relate to the conditional uses sought under the revised plans." Tr. Ct., Slip Op., 9/26/08, at 43.

After the Board appealed[3] and filed a concise statement of issues on appeal, the trial court issued a short opinion. The trial court explained that it remanded the matter to the Board because its findings and conclusions were deficient. Tr. Ct., Slip Op., 12/3/08, at 1–2. In response to a challenge to the allowance for revised PRD plans, the trial court stated that there are several significant aspects of the plan that are not contrary to the zoning ordinance and that by reducing the number of housing units Robal could address the remaining issues of noncompliance. Tr. Ct., Slip Op., 12/3/08, at 2–3.

### III.

■ The Board's appeal from the trial court's remand order is currently before this Court. Generally, where the trial court takes no additional evidence, the scope of appellate review in a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Kassouf v. Twp. of Scott,* 584 Pa. 219, 883 A.2d 463 (2005).

■ However, where a court remands a land use matter for findings sufficient for appellate review, there is an exercise of discretion. *See Domeisen v. Zoning Hearing Bd. of O'Hara Tp.,* 814 A.2d 851 (Pa. Cmwlth.2003) (no findings to support sign variance); *Lando v. Springettsbury Twp. Zoning Bd. of Adjustment,* 4 Pa.Cmwlth. 312, 286 A.2d 924 (1972) (*en banc*) (Mencer, J.) (where municipal board made no findings to support variance, decision to remand for correction of error rests in the discretion of the court). The major considerations for the exercise of discretion are the extent of the error and the effect on the parties of the delay attendant on a remand. *Lando.* An abuse of discretion exists where the trial court reached a conclusion which overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Middletown Twp. v. Lands of Stone,* 595 Pa. 607, 939 A.2d 331 (2007).

### IV.

The Board raises three assignments of error. First, it highlights the trial court's findings that the tentative PRD plan failed to comply with substantive requirements of the Ordinance; nevertheless, the trial court remanded to allow Robal a "second bite of the apple" to attempt to cure substantive deficiencies. In doing so, the trial court violated the Section 1006–A of the MPC, 53 P.S. § 11006–A(c) (if court finds a decision unlawfully restricts development,

---

2. Act of July 31, 1968, P.L. 805, added by the Act of Dec. 21, 1988, P.L. 1329 *as amended.*

3. In an order entered November 24, 2008, this court concluded that the appeal by the Board was an interlocutory appeal as of right under Pa. R.A.P. 311(f)(2).

it may order development approved as to all elements or as to some elements and refer other elements to governing body), and long-standing case authority recognizing the governing body's discretion to reject a plan outright if validly supported by one objective, substantive requirement. *E.g., CACO Three, Inc. v. Board of Supervisors of Huntington Twp.*, 845 A.2d 991 (Pa.Cmwlth.2004); *Shelbourne Square Assocs., L.P. v. Bd. of Supervisors, Twp. of Exeter, Berks County*, 794 A.2d 946 (Pa. Cmwlth.2002). Further, the trial court improperly failed to give the Board's decision appropriate deference.

Second, the Board challenges the trial court's conclusion that Roads A and C were not structures which must be set back from the property's perimeter. Finally, the Board challenges the trial court's conclusion that its decision did not contain sufficient fact-finding to support a determination that stormwater management was inadequate.

Robal, on the other hand, contends that a fair reading of the trial court's opinion supports the conclusion that the Board failed to work with Robal in good faith, and the Board failed to support several conclusions of law with factual evidence or support. As a result, a remand for proper adjudication and procedural process was appropriate.

As to Roads A and C, Robal argues that if roads are structures subject to a perimeter setback, there could be no road access to a property. Robal supports the trial court's interpretation which sought to avoid such an absurd result.

Regarding the stormwater control plan, Robal supports the trial court's remand so that factual findings can be made on this issue.

In reply, the Board contends that the trial court determined the tentative PRD plan did not comply with the minimum open space requirement, notwithstanding Robal's attempts to obfuscate the issue. The Board also disputes Robal's argument that it acted in bad faith in processing and rejecting the tentative PRD plan. Finally, the Board explains why interpreting the term "structure" to include roads will not lead to an absurd result.

## V.

As more fully explained below, we conclude that the Board properly rejected the tentative PRD plan for at least one objective, substantive reason, failure to comply with the Ordinance's 50% minimum open space requirement. Complete findings and conclusions of law were made on this issue, thereby allowing for appellate review without remand for additional fact-finding. In the absence of supporting legal authority, the trial court misapplied the law by remanding the matter with allowance for Robal to amend its plans. We therefore reverse, thereby reinstating the rejection of the PRD plan.

## A.

█ If legitimate, a single reason may support denial of a preliminary land development plan. *Kassouf.* This Court formulates the test in the following manner: Where a subdivision plan complies with all objective provisions of the applicable subdivision ordinance as well as all other applicable regulations the plan must be approved. The rejection of a plan may stand, however, if validly supported by even one of several objections. *Shelbourne Square*, 794 A.2d at 950 (quoting *Herr v. Lancaster County Planning Comm'n*, 155 Pa.Cmwlth. 379, 625 A.2d 164, 168–69 (1993)). This principle applies as well to rejection of PRDs. *See generally* 2 ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE, § 12.2.12 (2010) (rules

relating to the rejection of PRD application are parallel to those involving subdivisions).

*Shelbourne Square* offers a good example of this principle in operation. In that case, this Court determined a local governing body's denial of a preliminary plan proposing a shopping center was proper where the plan did not comply with a subdivision ordinance requirement restricting direct access from the proposed shopping center to a major highway. The Court stated that while the governing body denied the plan based on numerous other technical defects that were correctable and did not warrant outright denial of the plan, the governing body's objection to the proposed highway access constituted a legitimate, substantive planning issue that justified denial.

Some cases state that the unmet requirements must be objective in order to justify outright rejection of a plan. This means that the ordinance must contain standards by which compliance can be measured. *See Michaels Dev. Co., Inc. v. Benzinger Twp. Bd. of Supervisors,* 50 Pa. Cmwlth. 281, 413 A.2d 743 (1980) (PRD ordinance provisions requiring open space contained no standards regarding location of open space area).

Similarly, some cases state that the unmet requirements must be substantive, not technical. In the seminal "bad faith" case of *Raum v. Board of Supervisors of Tredyffrin Township,* 29 Pa.Cmwlth. 9, 370 A.2d 777 (1977), the reasons given for subdivision denial were technical: too much information on the drawings and whether lots bisected by roads needed further subdivision. Since then, courts agree that many drawing requirements which can be corrected easily are technical in nature and do not support outright denial of an application.[4] Similarly, lot dimensions (as opposed to lot area) may be too technical to support denial.[5] In some circumstances, a failure to describe the materials and size of water and sewer mains and the failure to attach a letter from a water supplier documenting adequate capacity may be too technical to support denial.[6]

As determined by appellate courts, the following reasons are substantive and sufficient to support rejection: lot area (as opposed to lot dimensions);[7] stormwater requirements and grading requirements necessary for stormwater management calculations;[8] sewage or wastewater disposal requirements;[9] wetlands delineations;[10] highway access;[11] steep cross-section grades at the intersection with a public

---

4. *Shelbourne Square Assocs., L.P. v. Bd. of Supervisors, Twp. of Exeter, Berks County,* 794 A.2d 946 (Pa.Cmwlth.2002) (mislabeling of plans, failure to use proper wording/format for land survey).

5. *Herr v. Lancaster County Planning Comm'n,* 155 Pa.Cmwlth. 379, 625 A.2d 164, 168–69 (1993).

6. *Shelbourne Square. But see Herr* (information for design of roadside swale and capacity of culvert to handle additional construction-related flows may be substantive reasons supporting denial).

7. *Herr.*

8. *Highway Materials, Inc. v. Bd. of Supervisors of Whitemarsh Twp.,* 974 A.2d 539 (Pa. Cmwlth.2009) (water basin in residential district and concomitant need for fence or berm); *Herr.*

9. *Highway Materials; Kohr v. L. Windsor Twp. Bd. of Supervisors,* 910 A.2d 152 (Pa.Cmwlth. 2006); *Schultheis v. Bd. of Supervisors of U. Bern Tp., Berks County,* 727 A.2d 145 (Pa. Cmwlth.1999) (soil percolation and probe tests).

10. *Schultheis.*

11. *Shelbourne Square.*

street;[12] and, erosion and sedimentation controls.[13]

**B.**

Open space is defined by Section 201 of the Ordinance as "[l]ands characterized as critical environmental areas or used for noise and/or visual buffers and described in the Open Space Provisions, Article XV." As to the open space requirement for a PRD, Section 605.A.2 of the Ordinance provides that "[n]ot less than fifty percent (50%) of the total area of the property shall be designated as open space, subject to the provisions of Article XV." Article XV of the Ordinance establishes comprehensive regulations, including Section 1502 which includes use regulations, Section 1503 which identifies critical environmental areas, Section 1504 which details performance standards and Section 1505 which addresses ownership/maintenance requirements.

Section 1502.C of the Ordinance addresses use regulations in open space and provides in pertinent part (with emphasis added):

> C. *Prohibited Use and Activities:*
>
> 1. Structures other than those associated with uses under 1502.A. and 1502.B. herein.
>
>       *       *       *
>
> 3. *Cut and fill* other than in association with any uses related to uses under Sections 1502.A. and 1502.B., herein.

It is undisputed that residential structures and any cut and fill associated with residential structures are prohibited in restricted open space pursuant to Section 1502.C of the Ordinance.

■ We hold that the minimum open space requirement is an objective require-ment, because there is a sufficient standard, a simple ratio, by which to judge compliance. *Michaels Dev.* In addition, we hold that the minimum open space requirement is substantive, because it relates to minimum area. *See Herr.* Further, the MPC specifically authorizes PRD standards for common open space, including "standards for density, or intensity of land use . . . ." Section 705(f) of the MPC, 53 P.S. § 10705(f). Accordingly, rejection of the tentative PRD plan is valid if the minimum open space requirement is not met.

**C.**

■ Here, according to Robal's plan, 15.367 acres of the property's 30.585 acres would be devoted to open space, representing 50.08% of the development tract. However, the plan showed cut and fill and grading and disturbance of open space to accommodate dwelling unit construction. In particular, the Board determined that 1.718 acres included as open space contained cut and fill for residences and roads. F.F. No. 52; Discussion II(A)(2), Bd. Op. at 26. This determination, which is one of many on the minimum open space issue, clearly supports the conclusion that Robal's plan failed to meet the requirement. This is because it reduces the acres devoted to open space from 15.367 acres to 14.195 acres, less than 50% of 30.585 acres. This finding supports the Board's outright denial of the tentative PRD plan.

The trial court did not disagree with the Board's determinations relating to minimum open space. Indeed, it affirmed the Board in part, and this issue appears to be among those affirmed. Thus, there was at least one objective, substantive Ordinance

---

**12.** *Kassouf v. Twp. of Scott,* 584 Pa. 219, 883 A.2d 463 (2005).

**13.** *Schultheis.*

requirement not met, and the Board could reject the plan outright without legal error or an abuse of discretion. *Kassouf; Shelbourne Square.*

## D.

The trial court did not discuss the cases which support rejection of a land development plan where one substantive defect is present. Instead, the trial court focused on various other issues where further findings were necessary and decided that a remand was appropriate. In doing so, the respected trial court erred.

The cases upon which the trial court relied allow a remand where a municipal body's findings are insufficient for appellate review. The findings regarding the minimum open space requirement, however, are extensive, detailed, and sufficient for appellate review. Neither the trial court nor the parties suggest otherwise. The findings support the action taken by the Board. Under these circumstances, additional findings on other issues would be an exercise of dubious utility.

Moreover, the cases upon which the trial court relied do not involve the taking of additional evidence or the further modification of plans. In those cases, remand was allowed only for the purpose of fact-finding. We are aware of no authority for the trial court's leave to amend the tentative PRD plan last before the Board. In this regard, the trial court misapplied the law.

A case remarkably similar to the current controversy is *Schultheis v. Board of Supervisors of Upper Bern Township, Berks County,* 727 A.2d 145 (Pa.Cmwlth.1999). In *Schultheis,* a developer submitted a sketch plan for a proposed residential subdivision. The township engineer reviewed the sketch plan and issued a review letter indicating the plan was deficient under the subdivision ordinance because of the lack of soil percolation and probe tests and wetlands delineation.

About five months later, the developer submitted his preliminary plan. A week after submission of the preliminary plan, the township adopted a new zoning ordinance that reduced the number of permissible lots for the proposed development. The township engineer then issued a review letter indicating the plan was deficient under the subdivision ordinance with regard to soil percolation and probe tests, wetlands delineations and erosion and sedimentation controls. Shortly thereafter, the township's governing body denied the plan based on the deficiencies cited in the review letter. After the denial, the developer submitted additional information in an attempt to cure the deficiencies.

On the developer's appeal, the trial court held the grounds for denial were relatively minor; accordingly, it remanded the matter in order to provide the developer an opportunity to correct the deficiencies.

On further appeal, however, this Court reversed, holding the deficiencies were substantive and, therefore, justified outright denial of the plan. The Court stated the degree of deviation from the relevant ordinance requirements was not critical where it was clear the plan did, in fact, deviate from the requirements. The Court further stated neither case law nor the ordinance required the governing body to grant conditional approval or permit the developer to revise his plan; rather, the governing body was only obligated to review the plan as submitted.

In short, *Schultheis* supports our conclusion that the trial court erred when it remanded the matter to allow Robal to correct deficiencies in its tentative PRD plan.

### E.

■ We reject Robal's argument that a fair reading of the trial court's opinions supports the conclusion that the Board failed to work with Robal in good faith. There are no findings that the Board violated a duty of good faith review, which might support a remand. *See Highway Materials, Inc. v. Bd. of Supervisors of Whitemarsh Twp.*, 974 A.2d 539 (Pa. Cmwlth.2009). There is no authority for such a remedy in the absence of extensive findings supporting a conclusion of violation of the duty of good faith review.

### F.

In summary, we agree with most of the conclusions reached by the trial court. Thus, we agree that the Board needed to support its conclusion that the Frisbee Golf Course did not qualify as active open space with further findings. We also agree that Roads A and C are not subject to perimeter setbacks. Further, we agree that additional findings are necessary regarding the adequacy of the stormwater control plan and the conditional use applications. We do not discuss these holdings in detail because they will not alter the result. The Board found facts sufficient to support its conclusion that Robal's PRD plan did not comply with at least one objective, substantive Ordinance requirement, the 50% minimum open space requirement of Section 605.A.2. As a result, the Board acted within its authority to reject the plan outright. For these reasons, we reverse the trial court order to the extent it did not affirm the Board.

### ORDER

**AND NOW,** this 23rd day of June, 2010, the Order of September 26, 2008 of the Court of Common Pleas of Chester County in the above-captioned matter is **REVERSED** to the extent it did not affirm the June 1, 2007, Order of the Board of Supervisors of Charlestown Township.