IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lennar Corporation                  :

                                  :

        v.             :  No. 870 C.D. 2021

                                    :

The Board of Supervisors of     :

Middletown Township and       :

Orchards Industrial Land        :

Associates, L.P.               :

                                  :

Appeal of: The Board of Supervisors  :

of Middletown Township     :  Submitted: December 4, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED: January 18, 2024

Currently before the Court in this case are two, related items. The first is Appellant the Board of Supervisors of Middletown Township's (Board) appeal of the Court of Common Pleas of Bucks County's (Common Pleas) June 29, 2021 order. Therein, Common Pleas reversed the Board's January 27, 2020 denial of a preliminary and final subdivision and land development plan application (Application) that had been submitted by Lennar Corporation (Lennar), and remanded this matter to the Board for further proceedings. This Application pertained to an approximately 15.86-acre, M-R multi residential-zoned parcel of land located along Woodbourne Road (Property) in Middletown Township (Township), which is currently owned by Appellee Orchards Industrial Land Associates, L.P. (OILA). *See* Reproduced Record (R.R.) at 5a-6a, 33a-34a, 652a-

54a. The second is OILA's Motion to Quash, in which OILA asserts that quashal is appropriate because the Board has taken an impermissible interlocutory appeal. After thorough review, we deny the Motion to Quash, vacate Common Pleas' order, and remand this case to the lower tribunal for further proceedings.

## I. Background

At some point in the past, Lennar entered into a purchase agreement with OILA, whereby Lennar became the equitable owner of the Property. *Id.* at 653a. In concert with this agreement, Lennar embarked upon an effort to develop the Property for residential use, first securing a number of variances and then submitting the Application to the Township. *See id.* at 29a-31a, 33a-75a, 77a-79a, 603a-06a.[1] The Application was subsequently reviewed by the Township's Planning Commission (Commission), which initially recommended that Lennar's preliminary plan be conditionally approved. *Id.* at 561a. Ultimately, however, the Commission recommended that the final plan be denied, on account of Lennar's failure to adequately justify its request for 10 waivers from requirements contained in the Township's Subdivision and Land Development Ordinance (SALDO).[2] *Id.* at 572a. The Board then held a public meeting on January 21, 2020, at which it considered the Application and then unanimously voted to deny it. *Id.* at 553a-54a. On January 27, 2020, the Township's solicitor sent a letter to Lennar, in which he explained that the Application had been denied for four reasons:

> 1. The impact and exacerbation that this proposed development would have on the existing traffic issues

[1] Lennar originally desired to build 123 townhomes on the Property, but decreased that number to 111 as part of the settlement agreement pertaining to the Township's appeal of the Township Zoning Hearing Board's decision to grant Lennar's requested variances. *See* R.R. at 593a-600a, 603a-06a.

[2] Middletown Township Subdivision and Land Development Ordinance, Bucks County, Pa., *as amended* (1985).

along Woodbourne Road as shown in the Traffic Impact study required under [Section] 440-303.D.(7) of [the] SALDO. Such a development would increase traffic, further disturb the flow of traffic, and would be a detriment to the public health, safety and general welfare of the community, as noted in the purpose and intent sections of SALDO [Sections] 440-102 and 103;

2. [Lennar] failed to establish an undue hardship in accordance with § 440-602 of SALDO for Requested Waiver #4, and failed to show why it would be unreasonable for [Lennar] to comply with Section 440-415.A(1) of [the] SALDO providing all driveways to be located no less than 40 feet from any street intersection;

3. [Lennar] failed to establish an undue hardship in accordance with [Section] 440-602 of [the] SALDO for Requested Waiver #7, and failed to show why it would be unreasonable for [Lennar] to comply with Section 440-419.13 of [the] SALDO providing that there shall be a minimum seven[-]foot[-]wide planting strip between the curb and the sidewalk along streets; and

4. [Lennar] failed to comply with the nighttime noise levels requirement in accordance with [Section] 320-101(1) of the Township's Noise Ordinance[.]

*Id.* at 494a.

Lennar then appealed the Board's denial to Common Pleas on February 25, 2020, asserting that this denial was an abuse of discretion and legally erroneous, as well as that the Board had not acted in good faith during its consideration, and ultimate denial, of the Application. *Id.* at 5a-11a. Despite taking this step, Lennar subsequently notified OILA on March 18, 2020, that it was going to terminate its purchase agreement for the Property and file a praecipe to discontinue its appeal. *Id.* at 653a. OILA then intervened in Lennar's appeal on May 6, 2020, and Lennar subsequently filed its praecipe to discontinue on June 10, 2020. *Id.* at 2a, 15a, 638a. On July 17, 2020, Common Pleas approved a stipulation between Lennar and OILA, whereby OILA replaced Lennar as the named appellant in that appeal. *Id.* at 652a-

54a, 656a. Common Pleas then convened a hearing regarding the appeal on June 11, 2021, and, after taking no additional evidence, issued an order on June 29, 2021, that reversed the Board's denial of the Application and remanded the matter to the Board for further proceedings. *Id.* at 771a-72a. This order also tasked the Board with abiding by the following directives on remand:

> The [Board] is ORDERED to approve the plan [contained in the Application] upon it[] being revised to provide that all driveways are located no less than 40 feet from any street intersection in accordance with Section 440-415.A.(1) of the . . . []SALDO[], and that there shall be a minimum of 7[-]foot[-]wide planting strips between the curb and sidewalk, provided that the revised plan[] do[es] not violate any other sections of [the SALDO]. The [Board] shall act in good faith in its review of the revised plan[] consistent with concerns voiced by [Common Pleas] during [o]ral [a]rgument. The [Board] in its [denial letter] refused to grant two waivers requested by [Lennar]. [Lennar] has agreed, and shall now be permitted, to revise the plan[] to satisfy the two conditions referred to above consistent with the Township's previous review.

*Id.* at 771a. In doing so, Common Pleas did not directly address the assertion that the Board had not acted in good faith; rather the lower court merely stated that its June 29, 2021 order "adequately addressed [those] bad faith concerns by reminding [the Board] of its duty to review [the] revised application in good faith on remand." Common Pleas Op., 9/23/21, at 14. This appeal by the Board to our Court followed shortly thereafter.

## II. Discussion

### A. Motion to Quash

Before we reach the merits of the Board's appeal, we must first address OILA's Motion to Quash. OILA argues that this appeal must be quashed because Common Pleas' June 29, 2021 order was not final, in that it did not dispose of all

4

parties and outstanding claims; did not constitute an interlocutory order that is appealable by right; and was not appealable on a collateral basis. OILA's Br. at 20-21. We disagree, as this situation is fairly analogous to the one we addressed in *Schultheis v. Board of Supervisors of Upper Bern Township, Berks County*, 727 A.2d 145 (Pa. Cmwlth. 1999).

In *Schultheis*, a developer filed a preliminary land development plan application, which was denied by Upper Bern Township's Board of Supervisors on the basis that the developer's application was incomplete. *Id.* at 147. The developer then appealed the denial to the Court of Common Pleas of Berks County, which concluded that application's deficiencies were "relatively minor" and that, as such, the developer should be given an opportunity to remedy those deficiencies. *Id.* As a result, the Court of Common Pleas reversed the denial and remanded the matter to the Board of Supervisors, with instructions that it allow the developer to amend his application and to then consider the merits of that amended application. *Id.* The Board of Supervisors then appealed to our Court; of relevance to this matter, we recognized that the Court of Common Pleas' order was interlocutory, but concluded that the appeal was nevertheless proper pursuant to Pennsylvania Rule of Appellate Procedure 311(f).[3] We justified this determination as follows:

---

[3] An [interlocutory] appeal may be taken as of right from:

> (1) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion; or

> (2) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer that decides an issue that would ultimately evade appellate review if an immediate appeal is not allowed.

Pa. R.A.P. 311(f).

5

> Clearly, the issues raised by the Board [of Supervisors] would evade appellate review if we were to deny immediate appeal. After [the developer] is provided an opportunity to revise his [preliminary] plan and the Board [of Supervisors] reviews that plan on remand, the only issues that would be appealable would be those relating to the Board[ of Supervisors'] review of [the] revised . . . plan. Thus, whether [the developer's original p]reliminary [p]lan was complete would evade review.

*Id.* at 148.

Though this matter does not involve a purportedly incomplete land development plan, the circumstances here are still substantially similar to those present in *Schultheis*. Common Pleas has directed the Board to allow OILA an opportunity to amend the Application, so that OILA can remedy the specific deficiencies that the Board identified and relied upon when it declined to approve the development plan contained therein, and to then consider the merits of that amended Application. Any potentially appealable issues that resulted from the Board's actions on remand would therefore relate solely to the amended Application, just as in *Schultheis*, and the substantive propriety of the Board's January 27, 2020 denial letter would consequently evade appellate review. Accordingly, we conclude that we have jurisdiction over this appeal under Pennsylvania Rule of Appellate Procedure 311(f) and deny OILA's Motion to Quash.

### B. Merits

Moving on to the merits of this appeal,[4] the Board offers several arguments in support of its challenge to Common Pleas' June 29, 2021 order, which we reorder

---

[4] Where, as here, the trial court takes no additional evidence regarding a land use appeal, our review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Marshall v. E. Bradford Twp. Bd. of Supervisors*, 250 A.3d 481, 487 (Pa. Cmwlth. 2021). "An abuse of discretion occurs when [a local agency's factual] findings are not supported by substantial evidence in the record." *Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832, 838 (Pa. Cmwlth. 2008). "By 'substantial evidence' we mean such
**(Footnote continued on next page…)**

and summarize as follows. First, there is substantial evidence in the record that supports the Board's determination that there was no undue hardship that would have justified granting Requested Waivers #4 and #7, as well as its determination that the relief sought through those waivers would not have constituted the minimum necessary modifications from the SALDO's requirements. Board's Br. at 30-32; 38-42. Second, Common Pleas abused its discretion and committed errors of law by remanding this matter, because the Board had no obligation to conditionally approve the Application, as well as because the terms of the remand order will prevent the Board and other Township entities from properly assessing the adequacy of each waiver request, as well as of the Application as a whole. *Id.* at 42-44, 48-51. Third, remand was improper because Common Pleas did not hold that the Board had unlawfully prevented or restricted the Property's development, or had acted in bad faith when considering the Application. *Id.* at 31-37, 45-48. Finally, the undisputed record evidence conclusively establishes that approval of the Application would have harmed the public health, safety, and welfare by adding to the already overwhelming level of vehicular traffic congestion along Woodbourne Road. *Id.* at 52-55.

We agree with the Board that it acted within its discretionary authority by denying the Application. As we have explained in the past:

> Section 508 of the [Pennsylvania Municipalities Planning Code (MPC)[5]] provides the procedure whereby the governing body or planning agency of a township shall review and act upon a subdivision and land development application. 53 P.S. § 10508. If the plan submitted by the applicant complies with all of the objective provisions of

---

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983) (citations omitted).

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10508.

7

the applicable . . . []SALDO[] as well as all other applicable regulations, the plan must be approved by the reviewing body. *Herr v. Lancaster* [*Cnty.*] *Planning* [*Comm'n*], . . . 625 A.2d 164, 169 ([Pa. Cmwlth.] 1993). Subsection 2 of Section 508 [impose the following obligations upon] the reviewing body[]:

> When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.

53 P.S. § 10508(2); *see also Herr*, 625 A.2d at 169. A decision rejecting a subdivision and land development plan will be voided for contravening Section 508(2) of the MPC if it fails to cite to the specific provision of the SALDO relied upon or if the reasons for rejection are vague and undiscernible. *Coretsky v.* [*Bd.*] *of* [*Comm'rs*] *of Butler* [*Twp.*], . . . 555 A.2d 72, 74 ([Pa.] 1989). If the decision complies with Section 508(2) of the MPC, then rejection of the plan will stand if even one of the reasons for denial is supported by substantial evidence. *Herr*, 625 A.2d at 169.

*Delchester Devs., L.P. v. London Grove Twp. Bd. of Supervisors*, 161 A.3d 1106, 1108 (Pa. Cmwlth. 2017). "[A] single reason, if legitimate, may support the denial of the plan." *In re Provco Pinegood Sumneytown, LLC*, 216 A.3d 512, 517 (Pa. Cmwlth. 2019). Governing bodies may not reject a plan on the basis of minor, technical deficiencies, of the type that are easily correctable via amendment; however, where the identified defects are substantively noncompliant with a SALDO's standards, then the applicant is neither entitled to outright or conditional approval of its application, nor a second bite at the apple via leave to submit an amended application. *See Robal Assocs., Inc. v. Bd. of Supervisors of Charlestown Twp.*, 999 A.2d 630, 635-37 (Pa. Cmwlth. 2010); *CACO Three, Inc. v. Bd. of Supervisors of Huntington Twp.*, 845 A.2d 991, 993-94 (Pa. Cmwlth. 2004); *Shelbourne Square Assocs., L.P. v. Bd. of Supervisors, Twp. of Exeter*, 794 A.2d

946, 949 (Pa. Cmwlth. 2002); *Schultheis*, 727 A.2d at 149.[6] The polestar for determining whether a plan defect is substantive (and, thus, constitutes a valid basis for its rejection), as opposed to minor and technical, is whether the defect shows that the plan is objectively noncompliant with clear and measurable standards contained in the municipality's SALDO. *Robal*, 999 A.2d at 636; *Shelbourne*, 794 A.2d at 950.

As for SALDO waivers, there are two standards that circumscribe governing bodies' authority to grant an applicant's request for such relief. The first is statutory. Pursuant to Section 512.1(a) of the MPC:[7]

> A governing body . . . , if authorized to approve applications within the [SALDO], may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not

---

[6] We have stated in the past that misidentifying or omitting a plan's "labels, notations and design calculations . . . [is] not [an] objective defect[] justifying outright disapproval of the plan[.]" *In re Provco*, 216 A.3d at 524 n.12 (citing *CACO Three*, 845 A.2d 991); *accord Shelbourne*, 794 A.2d at 950. Furthermore,

> courts agree that many drawing requirements which can be corrected easily are technical in nature and do not support outright denial of an application. Similarly, lot dimensions (as opposed to lot area) may be too technical to support denial. In some circumstances, a failure to describe the materials and size of water and sewer mains and the failure to attach a letter from a water supplier documenting adequate capacity may be too technical to support denial.

*Robal*, 999 A.2d at 636 (footnotes omitted). By contrast, our courts have determined that

> the following reasons are substantive and sufficient to support rejection: lot area (as opposed to lot dimensions); stormwater requirements and grading requirements necessary for stormwater management calculations; sewage or wastewater disposal requirements; wetlands delineations; highway access; steep cross-section grades at the intersection with a public street; and, erosion and sedimentation controls.

*Id.* at 636-37.

[7] Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10512.1(a).

9

be contrary to the public interest and that the purpose and intent of the ordinance is observed.

53 P.S. § 10512.1(a). The second has been created through case law. We have held that a governing body may waive or modify a SALDO requirement "where a development offers a substantial equivalent to a subdivision requirement, where an additional requirement would offer little or no additional benefit, and where literal enforcement of a requirement would frustrate the effect of improvements." *Monroe Meadows Hous. P'ship, LP v. Mun. Council of Mun. of Monroeville*, 926 A.2d 548, 553 (Pa. Cmwlth. 2007). In keeping with these statutory and judicially established standards, Section 503(8) of the MPC authorizes municipalities to enact SALDO

> [p]rovisions for administering waivers or modifications to the minimum standards of the ordinance in accordance with [S]ection 512.1 [of the MPC], when the literal compliance with mandatory provisions is shown to the satisfaction of the governing body or planning agency, where applicable, to be unreasonable, to cause undue hardship, or when an alternative standard can be demonstrated to provide equal or better results.

53 P.S. § 10503(8). These parameters set the minimum threshold for modifying a requirement imposed through a SALDO and allow local governing bodies to "relax [such a requirement] upon proof less rigorous than that required in order to obtain a variance from [a] [z]oning [h]earing [b]oard." *Telvil Constr. Corp. v. Zoning Hearing Bd. of E. Pikeland Twp.*, 896 A.2d 651, 656 (Pa. Cmwlth. 2006); *see Brandywine Vill. Assocs., LP v. E. Brandywine Twp. Bd. of Supervisors* (Pa. Cmwlth., No. 499 C.D. 2020, filed July 20, 2021), slip op. at 19-20, 2021 WL 3046662, at *10;[8] *Tioga Pres. Grp. v. Tioga Cnty. Plan. Comm'n*, 970 A.2d 1200,

---

[8] Unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value. *See* Internal Operating Procedures of the Commonwealth Court 414(a), 210 Pa. Code § 69.414(a).

1205 (Pa. Cmwlth. 2009). The Township has availed itself of this delegated power by enacting Section 440-602 of its SALDO, which provides:

> A. The Board . . . may grant a modification of the requirements of one or more provisions of [the SALDO] if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of [the SALDO[9]] is observed.

---

[9] The stated purpose of the SALDO is "to regulate and control the division and development of land within [the] Township, pursuant to the authority set forth in the [MPC], setting forth the procedures to be followed by the Planning Commission and the Board . . . in order to promote the public health, safety, morals and general welfare of the community." SALDO § 440-102. The express intent animating the SALDO is

> to regulate the division and development of land as to:
>
> A. Regulate the flow of traffic in the streets and highways.
>
> B. Further the orderly and appropriate use of land.
>
> C. Secure safety from fire, panic and other dangers.
>
> D. Facilitate adequate provision for transportation, water, stormwater management, sewerage, schools, parks, playgrounds and other public facilities.
>
> E. Assure sites suitable for building purposes and human habitation, and to provide for the harmonious development of [the] Township.
>
> F. Coordinate existing streets with proposed streets, parks or other features of the Township.
>
> G. Ensure adequate open space for traffic, recreation, light and air.
>
> H. Provide proper distribution of population.
>
> I. Give effect to the policies and proposals of the Comprehensive Plan for [the] Township.
>
> J. Plan and manage stormwater runoff by regulating subdivisions and land developments in a manner consistent with the Neshaminy Creek Watershed Stormwater Management Plan and other relevant stormwater management.

SALDO § 440-103.

B. All requests for a modification shall be in writing and shall accompany and be a part of the application for development. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of [the SALDO] involved and the minimum modification necessary.

C. The request for modification shall be referred to the Planning Commission for advisory comments.

D. The Board of Supervisors shall keep a written record of all action on all requests for modifications.

SALDO § 440-602.

As mentioned above, the Board denied the Application, in relevant part, due to two, interrelated reasons. First, Lennar's plan did not comply with the Township regulations regarding the required 40-foot minimum distance between residential driveways and street intersections, per SALDO Section 440-415.A(1), as well as the required 7-foot minimum width of planting areas between street curbs and nearby sidewalks, per SALDO Section 440-419.13. R.R. at 494a. Second, Lennar did not establish that it was entitled to waivers allowing for deviation therefrom, because Lennar failed to show that an undue hardship existed or that it would be unreasonable for Lennar to comply with these requirements. *Id.*

In doing so, the Board acted well within its discretionary authority. Both SALDO Section 440-419.13 and Section 440-415.A(1) set forth clear and measurable standards and, thus, are objective and substantive, rather than minor and technical. Furthermore, OILA freely admits that Lennar sought waivers from those provisions so that the layout of the Property's residential development would be more aesthetically ideal, and that the plan for the Property could easily be revised to eliminate the need for those waivers. *See* OILA's Br. at 11-14, 35; *see also* Common Pleas Op., 9/23/21, at 24 ("[Lennar] indisputably confirmed its plan could comply

12

with [the Township's] SALDO and the need for [Requested Waivers] #4 and #7 could have been eliminated if [it] was given the opportunity to revise its plan. Meeting Video at 15:47-21:20 (admitting that [Requested] Waivers #4 and #7 were purely for aesthetic reasons)."). To state the obvious, waivers cannot be justified based solely upon applicants' interest in having developments appear more pleasing to the eye, as such personal desires cannot independently show that undue hardship exists or prove that it would be unreasonable for a municipality to demand compliance with the relevant strictures of its SALDO. Therefore, as Lennar sought waivers from the SALDO's substantive requirements, but failed to establish that the literal enforcement of those requirements was unreasonable or would result in undue hardship, the Board did not abuse its discretion by denying Lennar's Application.[10]

We must nevertheless add a caveat to this conclusion. It is well settled that

> [a] municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. The duty of good faith includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.

*Raum v. Bd. of Supervisors of Tredyffrin Twp.*, 370 A.2d 777, 798 (Pa. Cmwlth. 1976). Where a municipality has breached this duty and has instead acted in bad faith, that conduct can enable a court to approve the affected application, regardless of whether the plan contained therein actually conforms to the parameters of the municipality's SALDO. *See Herr*, 625 A.2d at 171.

---

[10] We also note that Lennar did not argue that its plan contained standards that would offer "equal or better results" when compared to the SALDO's requirements regarding the placement of driveways and the width of planting areas and, thus, did not seek to invoke the third type of SALDO waiver justification authorized through Section 503(8) of the MPC.

13

Both Lennar and OILA argued to Common Pleas that the Board did not act in good faith while handling the Application. *See* R.R. at 10a, 679a-82a. Despite this, Common Pleas did not address the merits of this argument and, in fact, expressly declined to do so. *See* Common Pleas Op., 9/23/21, at 14. We therefore elect to remand this matter to the lower court, so that it can squarely address whether the Board abided by its duty of good faith in this instance and, if not, whether approval of the Application is warranted in spite of the Board's otherwise valid denial thereof.

### III. Conclusion

In accordance with the foregoing analysis, we deny OILA's Motion to Quash, vacate Common Pleas' June 29, 2021 order, and remand this matter to the lower tribunal, with instructions that it address the merits of OILA's argument that the Board did not act in good faith when denying the Application.[11]

_____
ELLEN CEISLER, Judge

---

[11] Due to our disposition of this appeal, we decline to address the remainder of the Board's arguments.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lennar Corporation        :
                        :
     v.            :  No. 870 C.D. 2021
                        :

The Board of Supervisors of    :
Middletown Township and      :
Orchards Industrial Land       :
Associates, L.P.            :
                        :
Appeal of: The Board of Supervisors :
of Middletown Township    :

## **O R D E R**

AND NOW, this 18th day of January, 2024, it is hereby ORDERED:

1.    Appellee Orchards Industrial Land Associates, L.P.'s (OILA) Motion to Quash is DENIED;

2.    The Court of Common Pleas of Bucks County's (Common Pleas) June 29, 2021 order is VACATED;

3.    This matter is REMANDED to Common Pleas, with instructions that it rule upon OILA's argument that Appellant The Board of Supervisors of Middletown Township did not act in good faith when denying Lennar Corporation's preliminary and final subdivision and land development plan application.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge